Fitch *v.* Woodruff & Beach Iron Works.

ASA FITCH *vs.* THE WOODRUFF AND BEACH IRON WORKS.

The defendants made a written contract with the plaintiff to make and set up for him "one drop flue boiler, 6½ feet in diameter and 24 feet long, with all the iron work belonging to it—all the work to be done in the best manner and of the best material, and satisfactory." In a suit on the contract, in which the plaintiff claimed that the boiler was not properly made or set, he offered to show that, during the negotiations which resulted in the making of the contract, he informed the defendants how much machinery the old boilers then in his mill would operate and that he wanted a new boiler of the same efficiency, and that the defendants assured him that the boiler which they would make should be as efficient as the old ones and consume at least one-third less fuel, and that on the faith of this assurance he entered into the agreement; with further evidence that the boiler consumed more fuel and was less efficient than the old ones. Held, that the negotiations were merged in the written agreement and that the evidence was inadmissible.

The defendants claimed that the boiler was properly set, and that if it was not so it was owing to the interference of the plaintiff himself in the setting of it; and offered evidence to show that the mason whom they furnished for the work was a mechanic of skill and experience in such work, and had always set boilers successfully before. Held, that the evidence was admissible, not for the purpose of showing that the boiler was in fact set properly, but to show a readiness and effort on the part of the defendants to fulfil this part of their agreement and that it would have been performed by them if they had not been prevented by the interference of the plaintiff.

A question of waiver is one of intention, and usually depends on acts or declarations which are of an inconclusive or doubtful character, and furnish only evidence and grounds of inference, and which therefore it is the appropriate province of a jury alone to consider. The cases are very rare where the court, as a matter of construction, can determine whether the declarations or acts of a party constitute a waiver.

Where, therefore, a correspondence had passed between the parties to the contract, which the defendants claimed showed a waiver on the part of the plaintiff of certain rights under the contract, and the plaintiff requested the court to put a construction upon the correspondence, and to charge the jury that it did not constitute a waiver, but the court declined to do this, and submitted the question to the jury, upon all the evidence, whether there was a waiver, it was held that the course pursued was correct.

Where a general objection is taken to evidence, a part of which is admissible, and the objection is overruled, a new trial will not be granted, even though a part of the evidence objected to was inadmissible. Under the rule of the court, (Reg. Gen., Ch. 16, § 2,) the objection, to be regarded, must be taken to the particular evidence which is inadmissible.

ASSUMPSIT, upon a contract of the defendants to make and set up a boiler for a steam engine for the plaintiff. The cause

was tried to the jury on the general issue. The contract of the defendants, who were a corporation, was dated March 4th, 1857, and was as follows :—

" We agree to make for Mr. Asa Fitch one drop flue boiler, $6\frac{1}{2}$ feet diameter and 24 feet long, and all the iron work belonging to it, cocks, valves, &c., and make and attach one of Wright's cut-offs to his engine now running, for thirty-five hundred dollars, and all the old work taken out, delivered to the cars at his place in Yantic. We to furnish the men to take charge and set the boiler, he furnishing brick and mortar and to board all the men; we to pay their time and traveling expenses, and deliver all the work at the cars in Yantic ; all the work to be done in the best manner and material, and satisfactory. The whole work to be ready to deliver in from six to eight weeks, and work put up ready to start the mill in ten days from time of commencing.

WOODRUFF & BEACH IRON WORKS,

S. WOODRUFF, *President*."

On the trial the plaintiff, having introduced the agreement, offered evidence to prove that, during the negotiations which resulted in the making of the agreement, he informed the defendants how much machinery the old boilers then in his mill would operate, and that he wanted a new boiler which would operate as much machinery as the old ones; that thereupon the defendants assured him that they could make a new boiler for him which should be as efficient in all respects as the old boilers and consume at least one-third less fuel ; and that upon the faith of that assurance he entered into the agreement. To the admission of this evidence the defendants objected, and the court excluded it, on the ground that the preliminary arrangements were merged in the written contract; but permitted the plaintiff to introduce evidence to prove that the defendants were acquainted with the situation of the plaintiff's mill and machinery, and with the capacity of the old boilers, and the amount of power they were required to furnish.

The plaintiff offered evidence to prove that the boiler made by the defendants under the agreement consumed a much

larger quantity of fuel than the old boilers, and was not as efficient in operating the machinery in his mill. To the admission of this evidence the defendants also objected; and the court excluded so much of it as related to the comparative efficiency of the old and new boilers, on the ground that nothing contained in the contract required the new boiler to be as efficient as the old ones, but allowed the plaintiff to introduce evidence that the new boiler did not furnish power sufficient to operate the machinery in his mill.

The plaintiff claimed and offered evidence to prove, that the iron, of which a portion of the new boiler was made, was of an inferior quality and unsuitable for the purpose, and that in consequence thereof the boiler was defective, and he had been compelled to expend a large sum of money in putting it in repair. The defendants claimed that the iron was not of an inferior quality, but was of the best quality of American charcoal iron, and suitable in all respects for the purposes for which it was used, and in support of such position introduced the testimony of experienced judges of iron, to prove from examination that it was of the very best material; and to prove that they had been diligent, and exercised care in the selection of the material of which the boiler was made, the defendants introduced evidence to show that the iron was manufactured by Abbott & Co., of Baltimore, and that that firm had the reputation of manufacturing the best boiler iron in the United States. To this testimony the plaintiff objected, but the court admitted it.

The plaintiff further claimed that the new boiler was improperly constructed, and in consequence of such improper construction was of no value to him, and offered the testimony of machinists and boiler makers to prove, as experts, that a boiler constructed in the manner in which the boiler in question was constructed was faulty in its principles of construction; and in opposition thereto the defendants claimed that the boiler was in all respects constructed in a proper and workmanlike manner, and upon correct and scientific principles, and introduced the testimony of Woodruff, one of the defendants, as an expert in the business of boiler making, to

prove the correctness of such construction; and in order to show his experience in such matters, requested him to state the extent and variety of his work in that department, and also his knowledge of the practical working of boilers of this peculiar manner of construction made by him; and he stated that the defendants had manufactured boilers for the government of the United States to be used in the marine service, and for other parties in this state and elsewhere, and that all the boilers made by them had operated well, and had given perfect satisfaction to those who had used them. To the admission of this evidence the plaintiff objected; but the court admitted it, on the ground that the witness could show his experience, and also the applicability of his principle of boiler-making to the purposes for which it was designed.

The plaintiff also claimed, and offered evidence to prove, that the new boiler was not set in a proper manner; the defendants on the other hand claimed that the boiler was properly and skillfully set, so far as they were concerned, and that whatever defects existed in this respect arose from the interference of the plaintiff himself; and in support of this claim the defendants offered the testimony of Frederick W. Hills, one of the masons who assisted in setting the boiler, who stated, among other things, that he had set boilers for the defendants for a period of seven or eight years, and had always given satisfaction until he set the boiler for the plaintiff. To this evidence the plaintiff objected; but the court admitted it, to show the experience of the witness and his competency to perform the duty assigned him by the defendants.

It was admitted by the defendants that the boiler was not ready for delivery, and was not delivered on the cars at Yantic, until after the time named in the agreement, but they claimed that damages for the non-delivery within the time had been waived by the plaintiff, except as to the difference in coal that the old boiler would burn more than the new for the time of such delay; and, for the purpose of establishing this claim, the defendants introduced the following written correspondence between the parties.

" Woodruff & Beach Iron Works.　Hartford, April 27th, 1857.

" A. Fitch, Esq., *Dear Sir :*—Yours of the 24th inst. is received.　The alterations for your engine will all be completed this month, but we shall be delayed upon the boiler unavoidably.　The iron was not delivered at the mill as soon as promised, and we ordered it shipped by first steamer, which was done, and the steamer was frozen in at the mouth of our river about three weeks, which delayed the completion of the boiler from four to six weeks.　We shall not be able to deliver it until about the first of June.　We regret this, but could not foresee it, and are doing all we can to forward it.　We trust you will be able to extend the time until June 1st without loss to you.　Yours truly,　H. B. BEACH, *Treasurer.*"

" Bozrah, Conn, May 11th, 1857.

" Messrs. Woodruff & Beach : *Gent :*—Your letter of the 27th of April came duly to hand, and but for indisposition I should have replied sooner.　I am exceedingly sorry for the delay of the boiler, and I shall be under the necessity of charging to you the difference of the amount of coal which we burn with the old boilers to what we shall burn with the new boiler, from the 1st of May until such time as you deliver the new one.　　Yours truly,　　　ASA FITCH."

" Woodruff & Beach Iron Works.　Hartford, June 2d, 1857.

" Asa Fitch, Esq., *Dear Sir :*—We expect to ship your boiler on Wednesday the 10th inst.　At what time can you stop your mill ?　We would like to commence putting the work up on the Monday following.

Yours truly,　H. B. BEACH, *Treasurer.*"

" Bozrah, Conn., June 5th, 1857.

" Messrs. Woodruff & Beach: *Gentlemen :*—Your favor of the 2d inst. is at hand, and in reply I would say that I have only to confirm my letter dated the 11th of May, to which you have not replied.　I am very glad to learn that the boiler will be shipped on Wednesday next, and I will make my arrangements so that you can come along with it and commence at once putting it in operation.　Please inform me what day and what time of day it will arrive at our (Yantic) station, and I

will have my teams there ready to load it and draw it to the mill. Yours truly, Asa Fitch."

No other evidence was offered to prove a waiver by the plaintiff of damages for the non-delivery of the boiler in the time provided in the agreement, except the fact of the subsequent acceptance of the boiler, and evidence that the plaintiff afterwards presented a bill for damages against the defendants in which no charge was made for any such delay except for difference in coal. The plaintiff claimed, and requested the court to charge the jury, that nothing contained in the correspondence amounted to such a waiver. The court did not so charge the jury, but informed them that whether there was a waiver by the plaintiff or not was a question of fact for them to determine from all the evidence relating thereto, and that silence alone was not a waiver, but that a waiver might be implied as well as expressed.

The jury returned a verdict for the defendants, and the plaintiff moved for a new trial.

*Wait* and *Hovey*, in support of the motion.

1. The evidence offered by the plaintiff to show what passed between him and the defendants during the negotiations which resulted in the making of the contract declared on, and to prove that the boiler made by the defendants under that contract consumed more fuel than the old boilers, was admissible for the purpose of showing the situation of the parties at the time of making the contract, and the object which they had in view in making it. *Brown* v. *Slater*, 16 Conn., 192, 195. *Baldwin* v. *Carter*, 17 id., 201. *Tyrrell* v. *Hope*, 2 Atk., 558. It was admissible also to show in what sense the word "satisfactory" was used in the contract. *Gray* v. *Harper*, 1 Story, 574.

2. The defendants were bound by the contract to make the boiler of the best material; and if they failed to do so, they were not exempted from liability to the plaintiff for the damage he had sustained thereby, by showing that they had been diligent and had exercised care in the selection of the material. The evidence to prove that the iron was purchased of Abbott & Co., of Baltimore, and that that firm had the reputation of

making the best boiler iron in the United States, was therefore inadmissible. Chitty on Contracts, 735.

3. The testimony of Woodruff that the defendants had manufactured boilers for the government of the United States, to be used in the marine service, and for other parties in this state and elsewhere, and that those boilers had in every instance operated well and to the satisfaction of the parties who had used them, was inadmissible, because it does not appear from the motion that those boilers were constructed upon the same principles with the one made for the plaintiff.

4. The testimony of Hills that he had set boilers for the defendants for a period of seven or eight years, and had always given satisfaction until he set the boiler for the plaintiff, was inadmissible. 1st. It did not tend to prove that the boiler of the plaintiff was properly set, or that there was any interference with the setting of it on the part of the plaintiff. 2d. If the boiler was not properly set the defendants were liable in this action for such damages as the plaintiff had sustained thereby, and they were not relieved from such liability by proving that they had employed an experienced and competent man to do the work. Chitty on Contracts, 734, 735.

5. The interpretation and construction of the written correspondence recited in the motion were for the court and not for the jury. The court should therefore have charged the jury with regard to the claim of waiver, founded upon this correspondence, as requested by the plaintiff. 1 Greenl. Ev., § 277, note 2. *Hutchison* v. *Bowker*, 5 Mees. & Wels., 535.

*T. C. Perkins* and *Halsey*, with whom was *Child*, contra.

1. Evidence in relation to the negotiations prior to the execution of the written agreement, and also as to matters not included in the agreement, was rightfully excluded by the court below. No parol testimony could be admitted to vary the written agreement; and any parol agreement made before or at the time of the written one became merged in it. *Cummings* v. *Arnold*, 3 Met., 489. *Giles* v. *Comstock*, 4 Comst., 270. So far as these preliminary negotiations are set up in the plaintiff's declaration, it is only as matter of inducement,

which it was not necessary for him to prove, and which is mere surplusage. There was no ambiguity about the contract which required these facts to be shown. · The word " satisfactory " is not an ambiguous one, and can not be made to mean that the boiler should have other qualities than those expressly contracted for.

2. The testimony of " experienced judges of iron," introduced to prove, from examination, the quality of the iron used, was rightfully admitted, in accordance with the ordinary rules of evidence relating to the testimony of experts. 1 Greenl. Ev., § 572.

3. The evidence showing the reputation of Abbott & Co., and the manufacture of the iron by them, was rightfully admitted, to rebut the presumption of negligence on the part of the defendants, in failing to obtain the best material of which to construct the boiler, raised by the plaintiff's evidence of its unfitness for such purpose. If not rightfully admitted, yet the objection taken was not to this portion of the evidence alone, but embraced also the evidence of the experts introduced by the defendants to show the quality of the iron. This part of the evidence was clearly admissible, and, if it was, the objection, under the established practice on the subject, can not be sustained. *Ashmead* v. *Colby*, 26 Conn., 289.

4. Woodruff's testimony as an expert was clearly admissible to prove the correctness of the principles of construction. His testimony as to their operation is positive testimony to a positive fact material to the issue.

5. Hills' testimony was admissible to show the care and due diligence of the defendants, because on the question of setting the boilers his experience was material to the issue. The defendants claimed that if the boiler was not properly set it was because of the plaintiff's interference. If this was so they had done their full duty in being ready and offering to set it properly, and, for the purpose of showing this fact, they had a right to show that the mason whom they sent to do the work was fully competent to it by his skill and experience.

6. The court charged rightly in regard to the waiver. Whether the evidence in any case establishes a waiver of any

legal right by a party, is one of fact to be settled by the verdict of a jury. *Brown* v. *Keach*, 24 Conn., 73. *Fox* v. *Harding*, 7 Cush., 516, 521. *Bristol* v. *Tracy*, 21 Barb., 237. *Thayer* v. *Wadsworth*, 19 Pick., 352. *Hill* v. *Hobart*, 4 Shepl., 164. *Savage Man. Co.* v. *Armstrong*, 5 id., 34. *Union Bank of Georgetown* v. *Magruder*, 7 Pet., 287. But if the court should have passed upon the question, yet as this court can see that the jury have found correctly, a new trial will not be granted. *Brown* v. *Keach*, supra. *Wilcox* v. *Roath*, 12 Conn., 550.

STORRS, C. J. We do not think that any of the exceptions of the plaintiff to the rulings of the court below entitle him to a new trial. They will be noticed in their order.

1. This action was brought only upon the written agreement which is set out in the declaration; and the information given by the plaintiff to the defendants in regard to the old boiler in the mill of the former and his wants in respect to the new boiler, and the assurances of the defendants as to the kind or quality of boiler which they could make for the plaintiff, which were communicated to the latter during the negotiations between them which preceded and resulted in the making of that agreement, were merged in the agreement and therefore plainly inadmissible.

2. As there was no stipulation in that agreement requiring that the boiler to be made by the defendants should be as efficient as the plaintiff's old boilers in operating his mill, the evidence offered by the latter to prove the relative efficiency of the old and new boilers was also inadmissible, notwithstanding it was alleged in the breach in the first count of the declaration that the boiler made by the defendants was not as efficient as the old ones; for that allegation, having no reference to any of the requirements of the agreement, was plainly immaterial and of no avail for any purpose.

3. If an exception had been taken by the plaintiff specifically to the evidence adduced by the defendants to show that the iron, of which the boiler made by them was composed, was manufactured by Abbott & Co., and what their reputation was as manufacturers of boiler iron, it would be difficult to

justify its admisssion ; but as it was introduced together with evidence in regard to the actual quality of the iron used by the defendants, which was clearly admissible, and was not objected to specifically, but only by way of a general exception to the whole evidence, a new trial, under the rule established by us on that subject, should not be granted for its admission. As part of the evidence was admissible, it was the duty of the plaintiff to make a distinct objection to the particular portion of it which was not so.  Reg. Gen., 18 Conn., 574, ch. 16, § 2.

4. The admission of the testimony of Woodruff was too obviously proper to require vindication.

5. The testimony of Hills, as we understand that part of the motion which relates to that subject, was, in our opinion, admissible.  It was plainly not offered by the defendants for the purpose of showing that the boiler made by them was set in a proper manner.  It does not appear that the parties controverted on that point.  But the question was whether, if it was improperly set, it was owing to a want of skillfulness on the part of the defendants, or the interference of the plaintiff with them in setting it.  There does not appear to have been any question on the trial, and therefore there can be none made now, but that, if the defendants were ready and offered to fulfill this part of the agreement, they would not be liable if they were prevented from doing so by the acts of the plaintiff. The motion states that Hills was one of the masons employed by the defendants who assisted in setting the boiler.  His testimony tended to show that he had had much experience in that branch of business and was competent to perform the duty thus assigned to him.  We think that this evidence was admissible in order to prove a readiness and effort by the defendants to fulfill this part of their agreement and that it would have been performed by them but for the interference and prevention of the plaintiff, and that this was a proper topic of inquiry.

6. The question of waiver in regard to the time when the boiler was delivered to the plaintiff was properly submitted to the jury as one of fact.  If it be conceded that there may be cases where the declarations or acts of the parties to a con

tract are so express or unequivocal that it would not only be practical and competent, but even the duty of the court to determine as a matter of law that certain rights had been waived and could no longer be insisted on, those cases are very rare; because a question of waiver is one of intention, and most usually depends on acts or declarations which, in regard to their character, are of an inconclusive or doubtful nature, and furnish only evidence of intention and grounds of inference and deduction, which it is the appropriate province of a jury only to consider; and this was the character of the evidence on this subject in the present case. A reference to the communications between the parties, in their letters, will show that they contain no express waiver by the plaintiff of the stipulations in the agreement on which he relies, and therefore the court below could not, as a matter of construction, pronounce upon them on the claim of waiver; but yet the import of the language used by them, in connection with the subsequent acceptance of the boiler from the defendants and the charge for the delay in its delivery, was such as to furnish a ground for an inference that it was the intention of the plaintiff to extend the time for its delivery and not to insist on damages for the delay except in one particular; and whether the evidence was sufficient to warrant such an inference could be determined only by the jury. If, however, it was the duty of the court to dispose of the question of waiver in this case, we are clearly satisfied, without taking time to scrutinize the evidence, that it could properly have come to no other conclusion than the one to which the jury arrived; so that on that point the plaintiff has sustained no injury.

A new trial therefore is not advised.

In this opinion the other judges concurred.

New trial not advised.