SOPHRONIA E. ROBINSON

*vs.*

PENNSYLVANIA FIRE INSURANCE COMPANY.

Knox.    Opinion June 2, 1897.

*Insurance. Dwelling-House. Carriage-House. Waiver. Estoppel. Issues of
Law and Fact. R. S., c. 49, § 21.*

When there is no express waiver, it is not only necessary for the jury to deter-
mine what the facts are, which are relied upon for the purpose of showing a
waiver, but it is also the peculiar and appropriate province of the jury to
determine what inferences are properly deducible from such facts.

That the question whether or not there has been a waiver, where it is a matter
of inference, is one of fact for the determination of the jury, is generally, if
not universally, held by the courts of this country.

In an action on a fire insurance policy there was evidence that the plaintiff did
not furnish proofs of loss within a reasonable time as required by R. S., c.
49, § 21, but claimed that the defendant had waived the same. There was
also evidence tending to prove that the defendant denied its liability for the
reason that the policy did not cover the goods which were in a new building,
or carriage-house, which the plaintiff claimed belonged with her dwelling-
house. The plaintiff contended that such denial was a waiver of the proofs
of loss, and the defendant contended the contrary.

Upon the question of waiver the presiding justice instructed the jury as fol-
lows : "So, gentlemen, you will determine whether or not from the begin-
ning, the defendant has denied its liability under this policy because they
claim it did not cover this property; and if it has, then, gentlemen, they
have waived any proof on the part of the plaintiff; and, as I have said to you,
she may recover, provided she satisfies you that the policy covers the prop-
erty consumed by reason of its being in the building that was mentioned in
the policy."

*Held;* that the question as to whether or not there had been a waiver, was one
of fact for the jury.

VOL. XC.    25

It was, therefore, for the jury to determine, from the acts relied on and proved, whether the inference could be properly drawn, either, that there was an intention upon the part of the insurer to waive its rights to have a proof of loss furnished by the insured; or that the denial of liability, for another cause, was of such a character, or made under such circumstances, as to reasonably induce a belief upon the part of the insured, that the furnishing a proof of loss would be a useless formality, and that in relying upon the belief thus induced, the plaintiff neglected to make one.

The carriage-house building was erected soon after the policy was issued and distant from the dwelling-house nearly two hundred feet, but on the same lot. The presiding justice after instructing the jury that they would determine whether or not said building belonged to the house and stable, to be used therewith as a carriage-house building, or whether it was a separate place where business was to be carried on and extra-hazardous articles were to be kept, further instructed the jury as follows : "It is not necessary that it should be a building where only carriages are kept—it might be used for various purposes—the only question is, did it belong to them to be used to some extent as a carriage-house with that stable ? If it did, then this policy covered the property that was in it, and the plaintiff would be entitled to recover under the policy. If it did not, then the plaintiff cannot recover."

*Held;* that these instructions are correct and in accordance with the previous decision of this court in 87 Maine, 399. The building, viz: "her frame stable and carriage-house buildings, belonging with said dwelling and on the same lot" was within the description in the policy, if it was in part used by the plaintiff as a carriage-house, belonging with her dwelling-house and on the same lot, although it was also used to some extent by persons other than the plaintiff for other purposes.

See *Robinson* v. *Insurance Company*, 87 Maine, 399.

The case is stated in the opinion.

*T. P. Pierce*, for plaintiff.

Waiver: Counsel cited: *Lewis* v. *Monmouth Ins. Co.*, 52 Maine, 492; *Nickerson* v. *Nickerson*, 80 Maine, 100; *Day* v. *Insurance Co.*, 81 Maine, 247 ; May on Ins. 1st Ed. § 469, p. 573; *Tayloe* v. *Merchants F. Ins. Co.*, 9 Howard, 191; *Clark* v. *N. E. F. I. Co.*, 6 Cush. 342, and cases; *Bartlett* v. *Union M. F. Co.*, 46 Maine, 503; *Underhill* v. *Agawam F. I. Co.*, 6 Cush. 440; *Priest* v. *Citizens I. Co.*, 3 Allen, 602; *Franklin I. Co.*, v. *Coates*, 14 Md. 385; *Rogers* v. *Traders I. Co.*, 4 Paige, 583.

*W. H. Fogler*, for defendant.

Waiver: a question of fact for the jury : *Nickerson* v. *Nickerson*, 80 Maine, 100; *Smith* v. *Cal. Ins. Co.*, 87 Maine, 190; *Diehl*

v. *Adams Co. Ins. Co.*, 58 Pa. St. 443, (98 Am. Dec. 302);
*Enterprise Ins. Co.* v. *Parisot*, 35 Ohio St. 35, (35 Am. Rep.
590); *McPike* v. *Western Ass. Co.*, 61 Miss. 37; *West* v. *Platt*,
127 Mass. 372; *Savage Mfg. Co.* v. *Armstrong*, 17 Maine, 34; 7
Am. & Eng. Enc. of Law, 1056; *Farmer's Ins. Co.* v. *Moyer*, 97
Pa. St. 441; *Farmer's Ins. Co.* v. *Taylor*, 73 Pa. 342; *Penn. Ins.
Co.*, v. *Dougherty*, 102 Pa. St. 568; *Brink* v. *Hanover Ins. Co.*, 70
N. Y. 591–2; *Trask* v. *Ins. Co.*, 29 Pa. 198, (72 Am. Dec. 622);
*Patrick* v. *Ins. Co.*, 43 N. H. 621, (80 Am. Dec. 197); *Beatty* v.
*Ins. Co.*, 66 Pa. 9, (5 Am. Rep. 318); *Bennett* v. *Lycoming Co.*,
67 N. Y. 274; *Underwood* v. *Farmer's Ins. Co.*, 57 N. Y. 500;
*Norwich & N. Y. Trans. Co.* v. *Western Mass. Co.*, 34 Conn. 561;
*Heath* v. *Franklin Ins. Co.*, 1 Cush. 257; *Graves* v. *Wash. M. I.
Co.*, 12 Allen, 361; *Aetna Ins. Co.* v. *Tyler*, 16 Wend. 401;
*Blake* v. *Exchange Mut. Ins. Co.*, 12 Gray, 265; *Tayloe* v. *Merchants F. Ins. Co.*, 9 Howard, 390–403; *Peoria M. & F. Ins. Co.*
v. *Whitehill*, 25 Ill. 382–388; *Susquehanna Ins. Co.* v. *Staats*, 102
Pa. St. 529.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE,
     WISWELL, JJ.

WISWELL, J. By a policy dated May 27, 1892, the defendant
insured against fire the household furniture, and certain other personal property, of the plaintiff, "while contained in her one and
one-half story frame-dwelling and additions, situated No. 112 on
the south side of the old Thomaston Road in Rockland, Maine."
And, in another clause, "$325 on her vehicles of all kinds, harnesses, robes and all horse furnishings, hay and grain, together
with farming and miscellaneous tools, all while contained in her
frame-stable and carriage-house buildings, belonging with said
dwelling and on the same lot."

At the date of the policy the plaintiff, with her husband, was
occupying the frame dwelling-house and additions mentioned in
the policy. The buildings consisted of a house, ell and stable all
connected. In the month of May, 1892, the plaintiff erected, and

completed at about the date of this policy, another building on the same lot with the dwelling-house, one hundred and eighty-nine feet distant from the stable connected with the dwelling-house. The testimony showed that this new building was occupied in part by the plaintiff's son in making and painting carriages, in part for the storage of carriages there for sale, and that it also contained various carriages, harnesses, robes and other articles belonging to the plaintiff, and paint stock, paint brushes and carriage tools belonging to the plaintiff's son.

The new building, described as a "frame carriage-house and paint-shop building," together with the paint stock, materials and tools, household furniture and other articles contained therein, was also insured by the same company, under a policy dated June 30, 1892, and issued to the plaintiff and her son.

On September 30, 1892, the new building and all of its contents were destroyed by fire. The defendant paid the plaintiff and her son the full amount of insurance under the policy dated June 30. This suit is to recover for the loss of carriages, harnesses and other articles, mentioned in the description in the policy, belonging to the plaintiff and contained in this building. The defendant denied all liability upon the policy in suit, claiming that the property in the new building was not covered by the policy for the reason that, although it stood on the same lot with the dwelling-house, it was not "a carriage-house building belonging with said dwelling."

Upon this point the presiding justice, after instructing the jury that they would determine whether or not said building belonged to the house and stable, to be used therewith as a carriage-house building, or whether it was a separate and, distinct place where business was to be carried on and extra-hazardous articles were to be kept instructed the jury as follows: "It is not necessary that it should be a building where only carriages are kept. It might be used for various purposes. The only question is, did it belong to them to be used to some extent as a carriage-house with that stable? If it did, then this policy covered the property that was in it, and the plaintiff would be entitled to recover under the policy. If it did not, then the plaintiff can not recover."

We think that the instructions were appropriate and correct and in accordance with the opinion of this court when the same question between the same parties was before the court, see 87 Maine, 399. It certainly was not necessary that the building should be used exclusively as a carriage-house. It was within the description of the policy, if it was in part used by the plaintiff as a carriage-house belonging with her dwelling-house and on the same lot, although it was also used to some extent by persons other than the plaintiff, for other purposes.

As to the second point raised, we quote from the bill of exceptions: "The plaintiff did not within a reasonable time after her loss deliver to the defendant an account of the loss and damage as required by section 21 of chap. 49 of the Revised Statutes, but claimed that the defendant by its agents had waived the delivery of such proof of loss. There was evidence tending to prove that, when the defendant's agents were notified of the loss, they denied that the defendant was liable for such loss on the policy in suit for the reason that the policy did not cover the goods and chattels, in said new building, destroyed by fire. The plaintiff contended that such denial was a waiver of the proof of loss required by the statute, while it was contended by the defendant that such denial of the plaintiff's claim was not such a waiver."

Upon the question of waiver the presiding justice instructed the jury as follows: "So, gentlemen, you will determine whether or not, from the beginning, the defendant has denied its liability under this policy because they claim it did not cover this property; and if it has, then, gentlemen, they have waived any proof on the part of the plaintiff, and, as I have said to you, she may recover, provided she satisfies you that the policy covered the property consumed by reason of its being in the building that was mentioned in the policy."

We think that this instruction was erroneous. Ordinarily, the question as to whether or not there has been a waiver, is one of fact for the jury. "It is always so whenever it is to be inferred from evidence adduced, or is to be established from the weight of evidence." *Nickerson* v. *Nickerson*, 80 Maine, 100.

It was a question of fact in this case. There was no express waiver; it was therefore for the jury to determine whether, from the acts relied upon and proved, the inference could be properly drawn, either, that there was an intention upon the part of the insurer to waive its right to have a proof of loss furnished by the insured, or, that the denial of liability, for another cause, was of such a character or made under such circumstances as to reasonably induce a belief upon the part of the assured, that the furnishing of a proof of loss would be a useless formality, and that in relying upon the belief thus induced, she neglected to make the required proof of loss within a reasonable time.

When there is no express waiver, it is not only necessary for the jury to determine what the facts are, which are relied upon for the purpose of showing a waiver, but it is also the peculiar and appropriate province of the jury to determine what inferences are properly deducible from such facts.

That the question whether or not there has been a waiver, where it is a matter of inference, is one of fact for the determination of the jury, is generally, if not universally, held by the courts of this country. It was early so decided in this state in the case of *Savage Mfg. Co.* v. *Armstrong*, 17 Maine, 34, in which it was held "whether there was or was not such a waiver is for the decision of the jury, and the presiding judge can not order a nonsuit, even if the court should be of opinion that the evidence of waiver would not warrant a verdict." This case was cited and approved in *Nickerson* v. *Nickerson*, supra.

In *Smith* v. *California Ins. Co.*, 87 Maine, 190, the plaintiff's counsel requested the presiding judge to rule as a matter of law that the defendant had waived their right to arbitration. The court declined to do this, but explaining what might constitute a waiver, it submitted the question to the jury to determine for themselves. The ruling was sustained, although there was no discussion of the question as to whether this was within the province of court or jury.

In *Fitch* v. *Woodruff*, etc., *Iron Works*, 29 Conn. 91, it was held that this was a question for the jury, "because a question of

waiver is one of intention and most usually depends on acts or declarations, which in regard to their character, are of an inconclusive or doubtful nature, and furnishes only evidence of intention and grounds of inference and deduction which it is the appropriate province of the jury only to consider."

In *Fox* v. *Harding*, 7 Cush. 516, it is said: "It may be laid down as a general rule, that the question, whether the evidence in any case establishes a waiver of any legal right by a party, is one of fact to be settled by the verdict of a jury. . . . . In all questions of this sort, so much depends on the intent with which parties act, that it would be impossible for courts to establish any certain rule by which all cases could be governed. They must necessarily be left to the determination of juries, whose peculiar province it is, to ascertain the intent of parties as gathered from the various facts and circumstances proved in each particular case."

In *Nashua & Lowell R. R.* v. *Paige*, 135 Mass. 145, it is said: "Taking the view most favorable to the defendant, it was a question of fact, upon the evidence, whether he had not thus waived his rights upon which the plaintiff would, in a jury trial, have the right to go to the jury. The ruling, therefore, that, as matter of law, the defendant was entitled, upon the evidence, to recover under his declaration in set-off without passing upon this disputed question of fact, was error." Numerous other cases to the same effect might be cited, but it is unnecessary.

Nor, in our opinion, was the instruction complained of, a strictly correct statement of the law. It was too broad and unqualified. The mere denial by the company of its liability, because of the claim that the property destroyed was not covered by the policy, was not in and of itself a waiver. It would be evidence from which a jury, in connection with all the other facts and circumstances, might draw the inference that a waiver was intended; or, it might have the effect of a waiver, under certain circumstances, upon the doctrine of estoppel. A waiver is the intentional relinquishment of a known right. And even where a waiver is not intended, the language, conduct or even the silence of one party to a contract, may be of such a character and under such circum-

stances, as to induce the other party to believe that a waiver was intended, and, if acting upon this belief, he fails to perform a required condition, then the party, whose conduct caused the belief, will be estopped from taking any advantage thus obtained.

Upon the same principle it has very generally been held, that if an insurance company denies its liability upon other ground, and thereby causes the insured to believe that a compliance with the condition to furnish proofs of loss would be unavailing, and but a useless formality, and he, for that reason neglects to comply with such condition, it will be considered as equivalent to a waiver.

It is true that many decided cases contain statements to the effect, that a general denial by an insurance company of all liability, waives notice and proof of loss, but an examination of these cases will show that they very generally rest upon the essential principles of estoppel. And while this is not universally true, and although some courts assert that this rule is independent of, or at least, not necessarily based upon the doctrine of estoppel, we think that upon principle there can be no waiver unless one was intended, or unless the circumstances create an estoppel.

In *Welch* v. *London Assurance Corporation*, 151 Penn. St. 607, it was decided that when the insured, in good faith and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy as to proofs of loss, good faith equally requires that the company shall notify him promptly of any objections thereto, so as to give him an opportunity to obviate them, and that mere silence *may* so mislead him, to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel. In the opinion in that case it is said: "The plaintiff's fifth point, however, that if the authorized agent of the defendant refused payment of the loss, giving a specified reason therefor to the plaintiff, they must be confined to that reason upon the trial, and the jury should disregard any other defense now made by them, was entirely too broad, and its affirmance, as a general proposition of law, would be clear error. It ignores the elements of estoppel, and lays down a rule without reference to conditions essential to its existence and applicability."

And later in the same opinion, in speaking of certain cases in that state, it is said: "All of these cases rest upon the substantial element of estoppel, that the defendant, having led the plaintiff to suppose that a compliance with the preliminary formalities would be unavailing, could not thereafter set up the want of such preliminaries. Of the soundness of that principle there can be no question."

In *New York Life Insurance Co.* v. *Eggleston*, 96 U. S. 572, Mr. Justice Bradley, in delivering the opinion of the court said: "Any course of action on the part of an insurance company which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

In *Agricultural Insurance Co.* v. *Potts*, 55 N. J. Law, 158, the court adopts the language of Mr. Justice Bradley above quoted. In this case the insured procured additional insurance without the written consent of the insurer, as required by the policy; he notified the company and the company directed its agents to cancel the policy, which they failed to do until after the loss. It was held that the insurer was estopped from setting up a forfeiture, the court saying in its opinion: "The case thus presented would, in my opinion, come within the elemental rule of estoppel that in dealing with others no one shall be permitted to deny that he intended the natural consequences of his conduct, when such conduct has in fact induced others to rely upon it to their loss."

"In cases like the present, it must appear that the insured was misled to his prejudice; and where no act has been done, or left undone by the insured, in reliance on the act or non-action of the insurer, there can be no estoppel. The acts or declarations must have influenced the conduct of the other party to his injury." *Wheaton* v. *North British & Mercantile Ins. Co.*, 76 Cal. 415, (9 Am. St. Rep. 216).

In *Butterworth* v. *Western Insurance Co.*, 132 Mass. 489, the principle of estoppel is recognized in this language: "No objection

is here made to the proofs, but, on the contrary, they are by implication recognized as satisfactory. It is against good faith for the defendant, after thus having lulled the plaintiffs into a feeling of security, to object at the trial that the proofs were not sufficient; and the jury were justified in finding, if not required to find, a waiver by the defendant."

The decisions of the New York Court have been somewhat conflicting upon this question, but in *Devens* v. *Mechanics & Traders Insurance Co.*, 83 N. Y. 168, the Court of Appeals distinctly recognizes this doctrine in the following language: " The doctrine of waiver was, we think, properly applied in that case, but it should not be extended so as to deprive a party of his defense, merely because he negligently, or incautiously, when a claim is first presented, while denying his liability, omits to disclose the ground of his defense, or states another ground than that upon which he finally relies. There must, in addition, be evidence from which the jury would be justified in finding, that with full knowledge of the facts there was an intention to abandon, or not to insist upon the particular defense afterward relied upon, or that it was purposely concealed under circumstances calculated to, and which actually did, mislead the other party to his injury."

The doctrine is thus stated in Bigelow on Estoppel, p. 660: " Frequent illustrations of the estoppel in question are to be found in cases of actions upon insurance policies, where the conduct of the underwriter has been such as reasonably to lead the assured to believe, until too late, that a requirement of the policy, as e. g. in regard to the proofs of loss or the prompt payment of the premium or of a premium note, will not be required. If the assured as a sensible man has really been misled it would be a fraud upon him to insist upon the term or condition forborne." And on page 664 the same author says: " The question to be considered in such cases, it will be seen, is whether the conduct of the one party had had a natural tendency to prevent the other from doing what he has undertaken to do and has not done."

For the reasons given, and upon the authority of the cases cited, this exception must be sustained.

*Exceptions sustained.*