## OTTINGER v. GENERAL MOTORS CORPORATION.

District Court, S. D. New York.

April 5, 1939.

Armand E. Lackenbach, of New York City (Otto C. Sommerich and Raymond T. Heilpern, both of New York City, of counsel), for plaintiff.

Drury W. Cooper, of New York City (Thomas J. Byrne and Drury W. Cooper, Jr., both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

This is a motion for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Plaintiff, a citizen and resident of New York, moves for summary judgment with respect to the first cause of action and for a partial summary judgment on the second cause of action, pleaded in the bill of complaint. Both the first and second causes of action are based upon a written contract dated May 20, 1927, between the plaintiff and the Ternstedt Manufacturing Company, a corporation incorporated under the laws of Michigan and now a subsidiary of the defendant, also a corporation, but incorporated under the laws of Delaware. Plaintiff in this suit joins in the bill of complaint, as amended,

four causes of action on contract and two causes of action for equitable relief, on alleged patent infringements: some are pleaded as independent claims; others as alternate claims. Rule 18, Federal Rules of Civil Procedure.

The facts pertinent to this motion are as follows:—Leon Ottinger in March of 1924 filed in the United States Patent Office an application for Letters Patent, Serial No. 696,426, for an Outside Door Handle Bushing. On May 20, 1927, plaintiff and the Ternstedt Manufacturing Company entered into a contract under the terms of which plaintiff granted the Ternstedt Manufacturing Company (defendant's predecessor in interest) a non-transferrable and non-divisible exclusive license to manufacture, sell and use in the United States and Canada, the invention described in the application for patent, Serial No. 696,426, which matured into Patent No. 1,641,988, which in turn was reissued as No. 17,787 on September 2, 1930.

The contract of May 20, 1927 (Exhibit annexed to the complaint) contains the following provisions:—

"2. The Company shall pay to the Patentee a royalty on each and every device used or sold embodying the subject matter of the invention or the equivalent thereof as defined by the allowed claims of the said pending application or the claims of any patent which may issue thereon, at the rate of one-half of a cent (½ cent) for each and every such device of the first three million used or sold during each calendar year; three-eighths of a cent (⅜) for each and every such device of the next two million used or sold during each calendar year; and one-fourth of a cent (¼) for each and every such device used and sold above the last mentioned amount during each calendar year. (The calendar years commence January 1, 1928). * * *"

"4. For each and every such device used or sold by the Company prior to January 1, 1928, the Company shall pay to the Patentee a royalty thereon at the rate of one-half of one cent (½) for each device. The Company shall pay to the Patentee a minimum sum of five thousand dollars ($5000.00) for the year beginning January 1, 1928, and a minimum sum of ten thousand dollars ($10,000.00) for each subsequent year during the existence of this contract."

"13. The Company on or after July 1, 1930, has the right to cancel this contract by the giving of six months' written notice to the Patentee, upon payment of royalties and/or prorata annual payments accrued or earned to the date on which said cancellation becomes effective."

As a result of certain interrogatories propounded to defendant the parties have stipulated that on or about December 30, 1933, said Ternstedt Manufacturing Company sold, assigned and transferred unto defendant, its manufacturing business and most of its assets and liabilities, " * * * including all rights and obligations irrespective of the time and manner of their accrual under the license agreement referred to in the complaint, which was executed on the 20th day of May, 1927, and that defendant then assumed and now assumes such obligations; that defendant admits that it operated under said license agreement from said 30th day of December, 1933 until the time, namely December 31, 1937, that termination of said license agreement was sought to be effected by the notice of June 28, 1937."

The first cause of action alleges that the Ternstedt Manufacturing Company failed to pay the minimum royalty of $10,000 due for the year 1932, pursuant to the terms of said agreement, except the sum of $6,529.55, leaving a deficiency for said year of $3,470.45. Defendant answers that the conduct of the plaintiff in failing to make a demand for the $3,470.45 for a period of five and a half years constitutes a waiver and that plaintiff is estopped to claim this sum. Plaintiff asks for summary judgment on this first cause of action.

As part of its second cause of action plaintiff relies on paragraph "13" of the contract of May 20, 1927, which required that as conditions precedent to its cancellation the defendant should (1) give six months' written notice of cancellation and (2) pay all royalties and/or prorata annual payments accrued or earned to the date on which said cancellation becomes effective. Arguing from the premise that the sum of $3,470.45 was due and owing both at the time notice of cancellation of the contract was given on June 28, 1937 and at the present time, plaintiff contends that the contract is still in force and on this motion seeks summary judgment in the sum of $10,000 for the year 1938 with interest.

Plaintiff's affidavit on this motion practically restates the principal parts of his

pleading of the first and second causes of action, and of the stipulation, and asserts that defendant's answer is a sham, interposed in bad faith.

Defendant's answer alleges that plaintiff by his conduct in threatening a patent infringement suit in June, 1938, conceded the due cancellation of the agreement of May 20, 1927; and that plaintiff in accepting and acknowledging the final payment of royalties for the last quarter of 1937 without asserting that it was deemed necessary that the alleged 1932 deficiency be paid as a condition to the cancellation of the license agreement, has by his conduct in not speaking, when he was in duty bound to speak, waived any right to demand payment of the 1932 deficiency as a condition precedent to the cancellation of the contract.

Paragraph "4" of the contract of May 20, 1927, leaves no doubt as to plaintiff's right to have received at the end of 1932 a minimum of $10,000 for the year 1932. Summary judgment on this count must be granted unless the facts set out in the special defenses of the answer and in defendant's answering affidavit and the exhibits attached thereto raise a genuine issue of fact as to implied waiver or estoppel, on which defendant would be entitled to a trial.

The affidavits of Thomas P. Archer, president of the Ternstedt Manufacturing Company, and of Howard B. Haskins, Director of Patents and New Devices Department of Fisher Body Division and Ternstedt Manufacturing Division of General Motors Corporation, indicate rather definitely that during the first part of the year 1933 relations between plaintiff and Ternstedt Manufacturing Company were strained. Mr. Ottinger had sought not only royalties under two other patents but wished as well be to be relieved of the burden imposed on him by the contract of May 20, 1927, to prosecute infringers of his patent. On May 22, 1933, the president of the Ternstedt Manufacturing Company wrote Mr. Ottinger a letter from which I quote as follows:—

"As a matter of fact there is nothing in the proposition you make that appeals as beneficial in any way to us and there is quite a little which would be quite beneficial to you. You realize, of course, that at the present time there are two or three infringers who should be prosecuted and under our contract you are required to instigate this prosecution at our request, or it may be instigated in our behalf and the costs up to $10,000.00 deducted from your royalties. The matter of requesting such prosecutions has been brought up several times, but in the press of other business has not been given the consideration it should have. It is quite likely, however, that we will come to a definite decision regarding this shortly.

\* \* \* \* \* \* \*

"We have reached a point where it is universally agreed that if you feel that it is to your advantage to press these matters continually it would be generally more desirable to us to discontinue our present construction and substitute devices which can be used with equal satisfaction from a sales and service standpoint.

"As a matter of fact the royalty which is being paid for this construction at the present time is rapidly approaching the point where we cannot afford to continue the construction any longer. \* \* \*

\* \* \* \* \* \* \*

"Frankly, under the existing circumstances we feel that you should be only too glad to drop any further consideration of the patents you mention and we honestly feel from a general business standpoint it would be to your advantage to give serious consideration to a reduction of present royalty on the bushing construction, at least on the lower price bracket cars."

Whether or not plaintiff decided that it would not be wise to ask for the 1932 deficiency, which he then had a legal right to do, because he feared the Ternstedt Manufacturing Company would consider it advisable to press the points raised in its letter or to cancel his contract on six months' notice, as it had a legal right to do, his conduct then and for the next five and a half years is sufficient to raise the issue of an implied waiver of the 1932 deficiency and an estoppel in respect to claiming said deficiency. At no time until August 4, 1938, did plaintiff make any claim in respect to the alleged deficiency in the royalty payments for the year 1932. Not until July 13, 1938, did plaintiff assert that the license agreement of May 20, 1927, was still in force. I do not hold that these circumstances are conclusive evidence of an implied waiver on the part of the plaintiff, but I do hold that they raise a genuine issue as to a material fact that should not be disposed of in a sum-

mary judgment proceeding. Consequently it cannot be said that plaintiff is entitled to a judgment on the first cause of action as a matter of law, and the motion must be denied. Rule 56(d).

The following quotation from Alsens A. P. C. Works v. Degnon Cont. Co., 222 N.Y. 34, 37, 118 N.E. 210, discusses the circumstances under which an issue of fact as to a waiver may be presented:—"A waiver, not express, found in the acts, conduct, or language of a party, is rarely established as a matter of law rather than as a matter of fact. This conclusion inheres in its nature and character. A waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed. It is the voluntary act of the party, and does not require or depend upon a new contract, new consideration or an estoppel. It cannot be recalled or expunged. Hotchkiss v. City of Binghamton, 211 N.Y. 279, 105 N.E. 410; Clark v. West, 193 N.Y. 349, 86 N. E. 1; Draper v. Oswego Co. Fire Relief Ass'n, 190 N.Y. 12, 82 N.E. 755; Zwietusch v. Luehring, 156 Wis. 96, 144 N.W. 257. It is essentially a matter of intention. Negligence, oversight, or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved. Occasionally it is proved by the express declaration of the party, or by his undisputed acts or language so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary. Then the waiver is established as a matter of law. Commonly it is sought to be proved by various species of proofs and evidence, by declarations, by acts, and by nonfeasance, permitting differing inferences and which do not directly, unmistakably, or unequivocally establish it. Then it is for the jury to determine from the facts as proved or found by them whether or not the intention existed. Farlow v. Ellis, 15 Gray (Mass) 229; Fox v. Harding, 7 Cush. (Mass.) 516; Robinson v. Penn. Fire Ins. Co., 90 Me. 385, 38 A. 320. The evidence must have probative force sufficient to prove that there was in fact an intention to waive the right or benefit—a voluntary choice not to claim it. The acts and language of the party must be given, as evidence, their natural and logical effect under the circumstances of the case."

Since the recovery sought in the second cause of action, to wit, $10,000 for the year 1938, on the alleged grounds that the contract was still in force, for that year, depends upon a determination of a genuine issue as to whether or not plaintiff led defendant to believe that he had waived the $3,470.45 deficiency for the year 1932, the motion for summary judgment is necessarily denied as to the $10,000 claimed for the year 1938 in the second cause of action. As to this second cause of action, there is also pleaded in the answer as a special defense that on July 2, 1937, plaintiff accepted notice of cancellation served on June 27, 1937, and kept silent for the six months subsequent to notice and before cancellation became effective under the terms of the contract and for seven months thereafter until August 4, 1938. If plaintiff had asserted any claim to the 1932 deficiency after the notice was served and before the year 1937 ended, defendant could have cured any alleged default by payment of the alleged 1932 deficiency. Further, the answering affidavits indicate that plaintiff for many months after the receipt of the notice of cancellation of the agreement of May 20, 1927, was conducting negotiations with defendant for a new agreement covering the same and certain additional patents of plaintiff. There is real substance to defendant's claim of waiver, estoppel and entrapment.

Defendant further alleges in its answer that it ceased to use plaintiff's patent after December 31, 1937, and used another door lock bushing in place of plaintiff's. The fifth cause of action pleaded in the complaint (in the alternative) is referred to in the answering affidavit. That fifth cause of action charges plaintiff with using in 1938 a device that infringed upon one of plaintiff's patents, the patent that was the subject of the May 20, 1927, license agreement. Plaintiff served defendant with a notice of infringement June 27, 1938. This is hardly consistent with plaintiff's claim that the license agreement between plaintiff and defendant was still in force in 1938. Of course, plaintiff has the right to plead inconsistent causes of action, as alternate claims under Rule 18, but in this case the patent infringement suit could not stand if the license agreement was still in full force and effect in 1938. Plaintiff by his pleading indicates that there is an issue of fact as to the contract claim, which if it

is decided against him, will still leave him with his alleged patent infringement claim.

I am of the opinion that plaintiff's motion should be denied in its entirety. Submit order on two days' notice.