## AUBURN WATER DISTRICT

v.

## INSURANCE COMPANY OF NORTH AMERICA.

Supreme Judicial Court of Maine.

Nov. 28, 1973.

Linnell, Choate & Webber by G. Curtis Webber, Auburn, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Harrison L. Richardson, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

On a summer evening in 1969 a break occurred in a twelve inch water main of the Plaintiff, a quasi-municipal corporation, on Court Street in Auburn. The main had been laid in 1882, was 5½ feet underground at this point, and was subject to a pressure of 85 to 90 pounds per square inch. The cause of the pipe's bursting was not known. The Plaintiff's workmen quickly shut off the flow of water in the main and had repaired the pipe by early morning.

A major reconstruction of Court Street by the City of Auburn was in progress at the time of the break, and substantial damage was done to the street by the flow of water and by the removal of a portion of the pavement to permit repair of the pipe. The Plaintiff promptly engaged several construction companies to provide material and services for the repair of the damage caused to the street by its broken main. These materials and services were fur-

nished and the repairs made within two or three days, and the charges for them and for the use of the city's grader and its employee, totalling $3,123.72, were paid by the Plaintiff to the furnishing companies. No suits for collection of these bills were ever brought against the Plaintiff. The record does not show that the Plaintiff Water Company's prompt action to remedy the damage to the street from the failure of the main resulted from any demand by the city.

At the time in question the Plaintiff was insured by a policy of indemnity issued by the Defendant. After paying the above bills, the Plaintiff demanded that the Defendant reimburse it for the amount of these bills pursuant to the insurance contract. The Defendant refused, one of its officers writing the Plaintiff that it had found no legal liability on the Plaintiff's part and, therefore, believed it had no obligation to pay under the policy.

Unhappy with this state of affairs, the Plaintiff brought this suit for declaratory judgment and relief. After making findings of fact and conclusions of law, the single Justice below decreed that the Defendant should have judgment. From this denial of its claim, the Plaintiff appeals to this Court.

We deny the appeal.

Though couched in terms of a request for a declaratory judgment, the Plaintiff's complaint seeks to impose contractual liability on the Defendant under the terms of the insurance policy mentioned above. The relationship between the Plaintiff, the insured, and the Defendant, the insurer, must be viewed in terms of familiar principles of contract law. As in the case of other contracts, we will examine the policy in its entirety. *E. g.*, Farm Bureau Mut. Ins. Co. v. Waugh, 159 Me. 115, 188 A.2d 889 (1963); Wheeler v. Phoenix Indemnity Co., 144 Me. 105, 65 A.2d 10 (1949). Our aim in studying the terms of the policy is to discover the intentions of the contracting parties. *E. g.*, Limberis v. Aetna

Casualty & Surety Co., Me., 263 A.2d 83 (1970); Unobskey v. Continental Ins. Co., 147 Me. 249, 86 A.2d 160 (1952).

■ The fundamental undertaking of the Defendant for our purposes is found in the insuring agreement. Section II, A.1 reads:

"This Company agrees with the named Insured to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of personal injury as defined herein . . .; and all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The Plaintiff contends that it was legally obligated to pay for property damage caused by the broken main. The Defendant argues that its legal obligation can be established only by entry of a judgment against the insured following a trial or by agreement of the insured, claimant and insurer. The Defendant's interpretation rests upon the precise language of two conditions which limit the insurer's liability to reimburse the insured. These two conditions read:

"No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company." (Sec. II, D.7.)

"The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence or accident." (Section II, D.5.)

After hearing the Justice found, and correctly we believe, that the Defendant's

undertaking to indemnify the Plaintiff for "all sums which the insured shall become legally obligated to pay" was subject to the fulfillment of the condition precedent that the amount of the insured's liability should first be determined judicially or by an agreement approved by the insurer.

These paragraphs of prerequisites to the insurer's liability can hardly be misunderstood, but their significance in the contract is emphasized by other passages in which the insured is bound to notify the insurer in writing of any occurrence or accident as soon as practicable (Section II, D.3.), and of any claim made or suit brought against the insured (Section II, D.4.), and in which the insurer reserves the right to "make such investigation, negotiation and settlement of any claim or suit as it deems expedient" (Section II, A.2.a).

The Plaintiff's acts in voluntarily and promptly restoring the damaged street surface, although apparently based on an admirable sense of civic responsibility, were made in total disregard of the Defendant's contractual right to participate in the determination of Plaintiff's legal liability. The Plaintiff's voluntary payments were, in the words of the policy, "at its own cost". The Justice in the Superior Court found that

"[n]o claim was ever made against the Auburn Water District which, instead, voluntarily made payment."

Our study of the record does not reveal whether or not any *claim* was made against the District, but the Justice could well have found that the District's action to repair the damage to the city's street was almost immediate and that some of the materials and services for which the District has paid were ordered the day after the accident and others on the following day. In any event, the testimony shows that, as the Justice also found, no legal action was ever taken against the District for payment of these bills and that they were in fact paid by the District without the establishment of the District's liability

either by judgment or by agreement between the Plaintiff, the claimants and the insurer.

The Justice's holding that the failure of the Plaintiff to fulfill this clearly expressed and important precondition bars recovery from the Defendant was correct —unless, the performance of the precondition was waived or is otherwise excused.

The Plaintiff points to a letter which the resident representative of the Insurance Company wrote to the District on January 15, 1970, some six months after the damages were repaired, saying:

"We have carefully investigated this matter and can find no basis for legal liability on your part. In view of this, we respectfully decline to make any offer of settlement or to assume any expense connected with the event."

The Plaintiff maintains that this letter constituted a waiver by the Defendant of the defenses of nonperformance by the Plaintiff of the contract's preconditions. While the Justice made no specific findings as to waiver it is implicit in his judgment that no waiver had been proved.

■ We understand waiver to be the "voluntary relinquishment of a known right". Bryson v. American Eagle Fire Ins. Co., 132 Me. 172, 174, 168 A. 719, 720 (1933). Undoubtedly, the rights which an insurance company may knowingly and voluntarily relinquish include the enforcement of preconditions of policies. *See* Biddeford Savings Bank v. Dwelling-House Ins. Co., 81 Me. 566, 18 A. 298 (1889).

■ However, we find nothing in the record which would support a finding of an inferred waiver of the Insurance Company's rights to insist upon performance of the preconditions. Here the Defendant Insurance Company was not confronted with a demand from the Plaintiff that it defend the Plaintiff against claims for damages which had been caused by the bursting of

Plaintiff's main. Plaintiff's demand was that the Insurance Company reimburse the Plaintiff for money which the Plaintiff had already voluntarily paid out without waiting for any determination of its liability.

We consider this situation to be entirely different from that presented by Albert v. Maine Bonding and Casualty Co., 144 Me. 20, 64 A.2d 27 (1949). There the Insurance Company's sudden decision not to defend the insured shortly before trial (which left the unrepresented Plaintiff with no acceptable recourse but to settle) was found to be a waiver of the precondition of a judgment of liability. In Jewett v. Quincy Mutual Fire Ins. Co., 125 Me. 234, 132 A. 523 (1926) the company which insured the Plaintiff against damage by lightning notified its agent by letter that it denied coverage on the ground that the damage was caused by wind and not by lightning. The Plaintiff there did not file the formal proof of loss which was a precondition of payment. The Court was satisfied that the jury had properly found this letter to have been a waiver, relying on the principle that

> "if an insurance company denies its liability upon other grounds, and thereby causes the insured to believe that a compliance with the condition to furnish proofs of loss would be unavailing, and but a useless formality, and he for that reason neglects to comply with such condition, it will be considered as equivalent to a waiver." 125 Me. at 237, 132 A. at 525.

Robinson v. Pennsylvania Fire Ins. Co., 90 Me. 385, 38 A. 320 (1897) had presented a similar situation in which the Insurance Company had first denied coverage of the particular property damaged and then, after being sued, had raised on trial as defense the Plaintiff's failure to meet the precondition of filing the formal proof of loss. The Justice instructed the jury that if the Insurance Company had denied coverage under the policy, this would be a waiver of other preconditions to recovery by the Plaintiff. The Robinson Court ordered a new trial, saying

> "It was too broad and unqualified. The mere denial by the company of its liability, because of the claim that the property destroyed was not covered by the policy, was not, in and of itself, a waiver. It would be evidence from which a jury, in connection with all the other facts and circumstances, might draw the inference that a waiver was intended; or, it might have the effect of a waiver, under certain circumstances, upon the doctrine of estoppel. A waiver is the intentional relinquishment of a known right. And even where a waiver is not intended, the language, conduct, or even the silence of one party to a contract may be of such a character and under such circumstances as to induce the other party to believe that a waiver was intended; and if, acting upon this belief, he fails to perform a required condition, then the party whose conduct caused the belief will be estopped from taking any advantage thus obtained.

> . . . . . .

> It is true that many decided cases contain statements to the effect that a general denial by an insurance company of all liability, waives notice and proof of loss, but an examination of these cases will show that they very generally rest upon the essential principles of estoppel. And while this is not universally true, and although some courts assert that this rule is independent of, or at least not necessarily based upon, the doctrine of estoppel, we think that upon principle there can be no waiver unless one was intended, or unless the circumstances create an estoppel." 90 Me. at 391, 392, 38 A. at 322, 323.

The Court also quoted with approval the language of the New York Court in Devens v. Mechanics & Traders Ins. Co., 83 N.Y. 168, 173 (1880):

> " 'The doctrine of waiver was, we think, properly applied in that case; but it

should not be extended so as to deprive a party of his defense, merely because he negligently, or incautiously, when a claim is first presented, while denying his liability, omits to disclose the ground of his defense, or states another ground than that upon which he finally relies. There must, in addition, be evidence from which the jury would be justified in finding, that with full knowledge of the facts there was an intention to abandon, or not to insist upon, the particular defense afterward relied upon, or that it was purposely concealed under circumstances calculated to, and which actually did, mislead the other party to his injury.' "

The principles announced in *Robinson* were not overruled by *Albert* or *Jewett* and are applicable here. The record does not disclose the correspondence which may have preceded the Defendant's resident representative's letter of January 15, 1970 or the representative's knowledge at the time he wrote the letter of the status of the "claims" against the Plaintiff. We note that in its complaint the Plaintiff alleges that the Plaintiff "has given notice to the Defendant that claims are being made against it for the sum aforesaid" and that the Defendant has refused to pay these "claims".

We cannot find in the record evidence which would require the Justice to draw from the ambiguous language of the letter the inference that the Defendant intended to rely wholly upon absence of negligence of the Plaintiff and to waive its right to the prerequisite that suit be brought and liability determined under the explicit terms of the policy.

Neither can we find evidence from which the Justice should have concluded that the Defendant's representative's letter misled Plaintiff to its prejudice. In fact, the settlement of Plaintiff's probable liabilities had already occurred before the letter was written.

We find no error in the Justice's entry of judgment for the Defendant.

The entry will be:

Appeal denied.

All Justices concurring.

WEBBER, J., did not sit.