MAXIME ALBERT

*vs.*

MAINE BONDING AND CASUALTY COMPANY

Aroostook.    Opinion, February 7, 1949.

*Harry C. McManus,*
*Scott Brown,* for plaintiff.

*William B. Mahoney,*
*George B. Barnes,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

FELLOWS, J. This is an action of assumpsit on an automobile liability insurance policy, brought in Aroostook County Superior Court under R. S., 1944, Chap. 100, Sec. 40. The defendant pleaded no coverage because it claimed that the person who was killed was an employee of the assured plaintiff, and as employee excluded by the policy; and also pleaded that the amount sued for was voluntarily paid by the plaintiff in settlement, without trial as provided in the policy and without the consent of defendant. The plaintiff filed replication stating that the injured man was not an employee at the time of the injury; and further that the defendant was estopped, by the acts and promises of its agents, to complain of the settlement which plaintiff made because of the lack of time to prepare for trial. The jury found a verdict for the plaintiff in the sum of $2,806.25. The case is now before the Law Court on defendant's exceptions to denial of motion to direct a verdict, and exceptions to refusal to give three requested instructions.

The facts that the jury probably found are, that Maxime Albert, the plaintiff, purchased of the defendant company an insurance policy to protect him against liability on a truck owned by him. The policy limits were five thousand dollars for "each person" and ten thousand for "each accident." The plaintiff was a farmer living in Frenchville, Maine, and raised potatoes on his farm in Frenchville, and also on a farm in St. Agatha eight miles away. During the harvesting season of 1944, one Pierre Langdo of Frenchville assisted in picking at twenty cents a barrel. Langdo furnished his own board, and there was no contract or arrangement between Langdo and the plaintiff for transportation to and from work. For transportation home Langdo rode in any automobile that might be going his way. Sometimes he rode in automobiles of other employees of the plaintiff, sometimes "in a truck he had," and he occasionally rode in the back of plaintiff's truck. When plaintiff was digging on the Frenchville farm Langdo always walked home.

After work on October 3, 1944, the plaintiff's truck, loaded with potatoes, left the field in St. Agatha for the potato warehouse in Frenchville. One employee named Bois, a resident of Quebec, was the driver, and the plaintiff was in the cab with the driver. The truck stopped at the warehouse in Frenchville and, while unloading, the plaintiff first learned that Langdo was riding on the rear of his truck. The truck turned sharply to go into plaintiff's home driveway, and Langdo was probably thrown off, receiving the injuries from which he died.

The assured plaintiff, Maxime Albert, immediately notified the defendant insurance company of the accident by communicating with its Madawaska agent, Cyr, who sold the policy. Cyr informed the plaintiff that the company would "take care" of the matter. An adjuster, Mr. Tidd, also interviewed the plaintiff later, while securing statements and other evidence, and told the plaintiff "don't worry, we will take care of it." During the fall and winter of 1944-5 the plaintiff made several other calls on Agent Cyr and was promised each time that "we will see to it" and "Mr. Tidd will take care of it."

On March 3, 1945 a writ with *ad damnum* of $15,000 was served on this plaintiff, Maxime Albert, brought by Odelie Langdo, administratrix, to recover for the death of Langdo, returnable to the April term of Superior Court (April 3, 1945) at Houlton, with notice for trial. The summons was at once given to the Agent Cyr by Maxime Albert, who again promised Albert that the matter would be taken care of by the company.

The evidence is conflicting as to whether the adjuster Tidd notified this plaintiff Albert on March 9, 1945 that the defendant claimed no coverage and would not defend, or whether the first notice of the company's definite intention to abandon was given by letter of the company dated March 28, 1945. The plaintiff did testify that some days after he had delivered the summons in the Langdo case to the Agent

Cyr, the company adjuster Tidd told "me he won't bother for that case; I could settle." In any event, it was but a matter of days before the April term of court when Maxime Albert knew that the defendant company would not defend the suit against him as was provided in the policy.

After the $15,000 Langdo suit was brought, and after Albert or his attorney learned that the company refused to defend, Albert endeavored to find Bois, who drove the truck, and Labrie who rode in the rear with Langdo, as his only witnesses. These two men were then outside the state and somewhere in Quebec or New Brunswick and Albert was unable to find them. The plaintiff Albert, therefore, on March 31, 1945 made in good faith a settlement with the administratrix of the Pierre Langdo estate for $2,500. This pending action by Maxime Albert against the defendant Casualty Company is brought to recover the amount of $2,500 paid in settlement, with interest.

## EXCEPTIONS

At the close of the evidence the defendant company moved for a directed verdict for the reasons (1) that it claimed Pierre Langdo was an employee of the plaintiff at the time he was injured, and under the terms of the policy an employee was not covered, and also (2) that the policy prohibited settlement without consent of the company, or without judgment after actual trial. The presiding judge denied the motion.

The defendant's motion for a directed verdict was properly denied. By the terms of the policy the defendant agreed to defend in the name of the assured any suit brought against him to recover for personal injury or death, even though such suit was groundless, false or fraudulent, and it reserved the right to control the investigation, negotiation and settlement. The defendant company conducted the investigation, and by its promises to the plaintiff, through its agents, that it would "look after the matter,"

prevented the plaintiff from promptly protecting his own rights and preparing his defense to threatened suit. No intimation of denial of coverage came from the defendant company for months, and then not until after suit with demand for trial at the return term. An insurance company should, with reasonable promptness, deny liability to its assured, if it intends to deny liability, in order to give the assured a reasonable time to protect himself. The date when the company's refusal to defend was given to the plaintiff, whether the notice of refusal was in reasonable season under the circumstances, and whether the rights of assured were prejudiced and in what manner, were all questions of fact for jury determination. If it was necessary that immediate settlement be made under the existing facts, it was also a matter for determination by the jury whether the settlement was fair and reasonable. As stated by Mr. Justice Holmes in *St. Louis Beef Co.* v. *Casualty Company*, 201 U. S. 173, "a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." No claim, that the settlement was unreasonable, was raised in the case at bar.

A distinct denial of all liability by an insurance company is equivalent to a declaration that it will not pay even if the amount of loss is determined. *Oakes* v. *Insurance Company*, 112 Me. 52; 90 A. 707. A denial of liability may render inoperative provisions for the benefit of the company precedent to right of action. *Jewett* v. *Insurance Company*, 125 Me. 234; 132 A. 523. See *Bryson* v. *Fire Ins. Co.*, 132 Me. 172; 168 A. 719, where waiver and estoppel are defined. For cases in other jurisdictions, holding that denial of liability waives provision requiring actual trial, see *St. Louis Dressed Beef Co.* v. *Maryland Casualty Co.*, 201 U. S. 173; 26 Sup. Ct. 400; 50 L. Ed. 712; *Interstate Casualty Co.* v. *Wallins Coal Co.*, 164 Ky. 778; 176 S. W. 217; L. R. A. 1915 F. 958; *Butler Bros.* v. *American Fidelity Co.*, 120 Minn. 157; 139 N. W. 355; 44 L. R. A. N. S. 609; *Rosenberg*

v. *Maryland Casualty Co.*, 130 Atl. 726; (N. J.) Misc. 1132; n. 41 A. L. R. 521; *Independent Milk Co.* v. *Aetna Life Ins. Co.*, 68 Mont. 152; 216 Pac. 1109.

The court cannot say, as a matter of law, under the circumstances here shown, that Pierre Langdo was an employee of plaintiff Maxime Albert while riding on the plaintiff's truck and therefore excluded under the policy. It was a question of fact, as to whether there was any express or implied contract for the plaintiff to convey Langdo as incident to or a part of his employment. The testimony of the plaintiff, that transportation was not a part, and that he did not furnish conveyance, and the evidence that Langdo used at times "a truck he had," and at times the vehicles of others who happened to be travelling his way, permitted the jury to find that Langdo was not then employed. *Chapman* v. *Cyr*, 135 Me. 416; 109 A. 736; *Littlefield's Case*, 126 Me. 159; 136 A. 724; *Michaud* v. *Taylor*, 139 Me. 124; 27 A. (2nd) 820; *Lunt* v. *Fidelity and Casualty Co.*, 139 Me. 218, 223; 28 A. (2nd) 736.

The defendant company requested an instruction that "even in the absence of evidence of an express agreement between employer and employee that employee was to be transported free of charge to and from work, you may find that employee was so transported by employer and fellow employees, and that deceased continued to be an employee until delivered at or near his home in such fashion." This instruction was properly refused. There must be either an express or implied agreement to transport as part of the employment, or transportation must be incident to the employment. There is no question in this case that the pay was for picking potatoes at so much per barrel. The fact that he was actually transported through the kindness of some fellow employees, or even by the employer, does not of itself make the transportation a part of the employment. He does not necessarily continue as an employee while riding towards home even if he finds a free ride on the em-

ployer's truck which is going in that direction. This requested instruction does not take into account that the jury should find some form of agreement, or find that the transportation was incidental to the employment to make him "continue" as an employee. *Littlefield's Case,* 126 Me. 159; 136 A. 724. The manner and kind of transportation may be some evidence of agreement or lack of agreement, but this requested instruction does not so state. It is incorrect and misleading.

The second requested instruction was "If you find, as a fact, that defendant, through its adjuster, notified plaintiff on March 9, 1945, that it declined, under the insurance contract, to defend his case, you are instructed, as a matter of law, that such notification was reasonable in point of time, and that defendant neither waived its right to withdraw nor is it estopped from invoking non-coverage * * *." The justice presiding in refusing to give such an instruction was clearly within his rights. Whether notification was reasonable in point of time was a jury question of fact under all the circumstances, as were all facts incident to whether there was or was not a waiver, or an estoppel.

The third refused instruction, to which refusal an exception was taken, states "If you find as a fact, that plaintiff paid deceased's administratrix for wrongful death $2,500 and that his obligation to pay had not been finally determined either by judgment against him after actual trial, nor by written agreement of plaintiff, the claimant and defendant, you must return a verdict for the defendant." This requested instruction was not a proper one. It contained the admitted facts. It invaded the province of the jury, in that it prohibited the jury from consideration of any fact regarding a possible waiver or estoppel. It was in effect the directed verdict which had previously been asked for and properly denied.

*Exceptions overruled.*