EVANSTON INSURANCE COMPANY,
Petitioner,

v.

ATOFINA PETROCHEMICALS,
INC., Respondent.

No. 03-0647.

Supreme Court of Texas.

Argued April 13, 2005.

June 13, 2008.

Opinion Concurring in Part and
Dissenting in Part Feb. 15, 2008.

Henry S. Platts, Jeffery T. Nobles, Marcy Lynn Rothman, Brit T. Brown, Frank

Anthony Monago, Beirne Maynard & Parsons, L.L.P., John P. Abbey, Spagnoletti & Associates, Houston, TX, for Petitioner.

David M. Bays, Jack G. Carnegie, Tom Bayko, Jones Day, Houston, Wyatt D. Snider, Snider & Byrd, L.L.P., John Stephen Morgan, Lindsay & Morgan, PLLC Beaumont, Allyson Newton Ho, Baker Botts L.L.P., Dallas TX, for Respondent.

R. Kinnon Goleman, Virginia K. Hoelscher, Brown McCarroll, L.L.P., George S. Christian, Texas Civil Justice League, Austin, Robert M. Roach Jr., Cook & Roach, L.L.P., Houston, Thomas D. Caudle, P.C., Waxahachie, TX, for Amicus Curiae.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, and Justice WILLETT joined, and in which Justice HECHT and Justice JOHNSON joined as to Parts I, II.A—II.D, and II.F.

Rehearing is granted. We withdraw the opinion and judgment previously issued in this case and substitute the following opinion.

In this case, we examine the interplay between a contractual indemnity provision and a service contract's requirement to name an additional insured. More particularly, we must decide whether a commercial umbrella insurance policy that was purchased to secure the insured's indemnity obligation in a service contract with a third party also provides direct liability coverage for the third party. In addition, we must decide whether the insurer is bound to pay the amount of an underlying settlement between the additional insured and a plaintiff. Finally, we must determine whether article 21.55 of the Texas Insurance Code, the "Prompt Payment of Claims" statute, authorized the imposition of penalties and attorney's fees for the insurer's failure to pay the claim timely. We conclude that the umbrella policy provides coverage for liabilities arising from the additional insured's sole negligence, that the settlement agreement binds the insurer to the amount recited therein, and that the additional insured is not entitled to penalties for untimely payment of claims. We affirm the judgment of the court of appeals to the extent that it resolves the coverage dispute in favor of the additional insured, and to the extent that it binds the insurer to the amount recited in the settlement agreement, but we reverse the court of appeals' judgment regarding damages and attorney's fees under article 21.55 because the additional insured is not entitled to recovery of such damages and fees.

## I

ATOFINA Petrochemicals, Inc.[1] contracted with Triple S Industrial Corporation to perform maintenance and construction work at ATOFINA's Port Arthur refinery. The service contract contained an indemnity provision and a requirement that Triple S carry certain minimum levels of liability insurance coverage. Triple S agreed to indemnify ATOFINA from all personal injuries and property losses sustained during the performance of the contract, "except to the extent that any such loss is attributable to the concurrent or sole negligence, misconduct, or strict liability of [ATOFINA]." Triple S also agreed to carry at least $500,000 of primary comprehensive general liability (CGL) insurance, "[i]ncluding coverage

---

1. ATOFINA is the successor company to FINA Oil and Chemical Company, which originally executed the independent contractor agreement with Triple S. For purposes of this opinion, we shall refer to FINA and ATOFINA, without distinction, as ATOFINA.

for contractual liability insuring the indemnity agreement," and an excess (or "umbrella") liability policy "following form for [the CGL policy]" of at least $500,000. Finally, the contract required Triple S to furnish certificates of insurance to ATOFINA evidencing the required insurance coverages and showing ATOFINA as an additional insured on the policies. Triple S complied with its contract obligations by purchasing a $1 million CGL policy from Admiral Insurance Company and a $9 million commercial umbrella policy from Evanston Insurance Company, and by furnishing the required certificates of insurance.

Matthew Todd Jones, a Triple S employee working at the ATOFINA facility pursuant to his employer's contract with ATOFINA, drowned after he fell through the corroded roof of a storage tank filled with fuel oil. Jones's survivors sued Triple S and ATOFINA for wrongful death. Admiral tendered its $1 million policy limits. ATOFINA then demanded coverage from Evanston as an additional insured under the umbrella policy. Evanston denied the claim, and ATOFINA brought Evanston into the case as a third-party defendant for a declaration of coverage. ATOFINA then severed its suit against Evanston from the remainder of the Jones litigation. Both ATOFINA and Evanston moved for partial summary judgment in the severed action. While the motions were pending, the Jones case was settled for $6.75 million. ATOFINA seeks to recover from Evanston the $5.75 million not covered by Admiral.

The trial court granted summary judgment in favor of Evanston. The court of appeals reversed the judgment, holding that the Evanston policy covered ATOFI-NA, and remanded the case to the trial court for determination of statutory penalties and attorney's fees.[2]

## II

Evanston argues it should not have to indemnify ATOFINA for its contribution to the Jones settlement for several reasons. First, it says ATOFINA agreed in its service contract with Triple S that it would not seek indemnification for losses resulting from its own negligence. Evanston says the language of its policy similarly excludes coverage for such losses caused by ATOFINA's negligence. The umbrella policy was a "following form" policy as required by the service contract, meaning that its coverage was no broader than the underlying policy, which identified ATOFINA as an additional insured "only with respect to liability arising out of [Triple S's] ongoing operations performed for [ATOFINA], but in no event for [ATOFINA's] sole negligence." Second, Evanston says this court's decision in *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*[3] precludes ATOFINA from obtaining a judgment for insurance proceeds based on losses arising from its own negligence.[4] Finally, Evanston says the Jones settlement amount was unreasonable and is thus unenforceable. We address these arguments in turn.

### A

■ In its service contract with Triple S, ATOFINA disclaimed any right of indemnity for losses "attributable to [its] concurrent or sole negligence." Under the terms of the service contract, ATOFINA is not entitled to be indemnified by Triple S if the Jones loss was occasioned in any way by ATOFINA's negligence. But ATOFI-

---

**2.** 104 S.W.3d 247, 251–52 (Tex.App.-Beaumont 2003) (per curiam).

**3.** 490 S.W.2d 818 (Tex.1972).

**4.** *See id.*

NA does not seek indemnity from Triple S; it claims instead that it is entitled to indemnification from Evanston by virtue of its status as an additional insured on the umbrella policy Evanston issued to Triple S.[5] Instead of looking, as the court of appeals did, to the indemnity agreement in the service contract to determine the scope of any coverage, we base our decision on the terms of the umbrella insurance policy itself.

In support of its insured status, ATOFINA points to part III of the Evanston policy, which defines who is an insured. Section III.B.6 states that an insured includes:

> A person or organization for whom you have agreed to provide insurance as is afforded by this policy; but that person or organization is an insured only with respect to operations performed by you or on your behalf, or facilities owned or used by you.

ATOFINA claims it is fully covered as an insured by virtue of this paragraph because it is a "person or organization for whom [Triple S has] agreed to provide insurance," because the Evanston policy is the kind of insurance that was intended to secure that obligation, and because the loss "respect[ed] . . . operations performed by [Triple S]."

But Evanston counters that ATOFINA fails to qualify as an additional insured under section III.B.6 because the language does not cover an additional insured for its own negligence. Although no fact finding has been made regarding who was responsible for Jones's death, Evanston contends that because Jones's death was caused solely by ATOFINA's negligence, the death did not "respect . . . operations performed by [Triple S]."

The courts of appeals have confronted these additional insured provisions on several occasions, producing divergent results. Like Triple S's policy, the insured contractor's policy in *Granite Construction Co. v. Bituminous Insurance Cos.*[6] provided for additional insurance "only with respect to liability arising out of operations performed for such insured."[7] *Granite* adopted a fault-based interpretation of "arising out of operations," recognizing coverage only if an insured's wrongful act during the operation caused the injury.[8]

---

**5.** We have held that an indemnity agreement will not be construed to cover an indemnitee's sole negligence absent express language to that effect. *Id.* at 822. Evanston urges us to take this rule and apply it to additional insured provisions as well. However, we have also noted that where an additional insured provision is separate from and additional to an indemnity provision, the scope of the insurance requirement is not limited by the indemnity clause. *See Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 804 (Tex.1992). In fact, we specifically declined to extend the rule in *Fireman's Fund* to contractual provisions other than indemnity agreements. *Id.* at 806.

**6.** 832 S.W.2d 427, 428 (Tex.App.-Amarillo 1992, no writ).

**7.** *Id.* Several courts recognize no material difference between the common term "arising out of operations" and the Evanston policy term "with respect to operations." *See McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.,* 7 S.W.3d 725, 730 n. 8 (Tex.App.-Austin 1999, no pet.); *Miller v. Superior Shipyard & Fabrication, Inc.,* 2001–2907, p. 5–6 (La.App. 1 Cir. 8/20/03); 859 So.2d 159, 162–64; *Acceptance Ins. Co. v. Syufy Enters.,* 69 Cal.App.4th 321, 81 Cal.Rptr.2d 557, 561–62 (1999); *Lim v. Atlas–Gem Erectors Co.,* 225 A.D.2d 304, 638 N.Y.S.2d 946, 946–48 (N.Y.App.Div.1996); *Fla. Power & Light Co. v. Penn Am. Ins. Co.,* 654 So.2d 276, 279 (Fla.Dist.Ct.App.1995). We cite cases addressing both terms because, even if there is a difference, whatever qualifies as "arising out of operations" also qualifies under "with respect to operations," the broader term.

**8.** *Granite,* 832 S.W.2d at 430.

The *Granite* court held that the claim did not "aris[e] out of operations performed by" the insured because only the additional insured company was responsible for the injury.[9]

The First and Third Courts of Appeals reached different results under a more liberal causation theory of additional insured provisions. In those cases, the additional insured provisions created coverage only "with respect to liability arising out of" the named insured's operations, and in both cases the claimants alleged that the additional insured companies acted negligently.[10] In *Admiral Insurance Co. v. Trident NGL, Inc.*, the court concluded:

> [B]ecause the accident in this case occurred to a[n] [insured's] employee while the employee was on the premises for the purpose of performing preventive maintenance on the compressor that exploded, the alleged liability for the employee's injuries "arose out of [the insured's] operations," and, therefore, was covered by the "additional insured" provision.[11]

The court in *McCarthy Brothers Co. v. Continental Lloyds Insurance Co.* applied a similar theory to find that a worker's slip-and-fall injury while retrieving tools at the job site "arose out of" the insured subcontractor's operation, even for purposes of a negligence claim against the additional insured premises owner.[12]

We prefer the reasoning of *Admiral* and *McCarthy* to *Granite* for two reasons. First, *Granite* relied on an underlying service contract that made the additional insured company responsible for the specific injury-causing act.[13] However, our decisions since *Granite* make clear that "the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant," and, accordingly, that "evidence outside the four corners of these two documents is generally prohibited."[14] Even if we examine the service contract here, we can easily distinguish this case from *Granite*. The service contract between Triple S and ATOFINA does not assign responsibility for maintaining the storage tank that caused Jones's injury. Rather, the contract gives Triple S the exclusive "power and authority to select the means, method and manner of performing" the operation, and provides that Triple S "shall have control of and be responsible for the WORK SITE." Far from shifting any responsibility to ATOFINA, the specific

---

9. *Id.* According to the court:
 Under the Granite–Brown contract, the loading operation was the sole obligation of Granite, and Brown was not responsible for that operation. Measuring the policy coverage provided Granite by the allegations in Valchar's petition, it is at once obvious that Valchar's claim of Granite's liability arose out of the loading operations performed by Granite; it was not a claim "arising out of operations performed for [Granite] by or on behalf of [Brown]," the only operations for which Granite was insured.
 *Id.; see also N. Ins. Co. of N.Y. v. Austin Commercial, Inc.*, 908 F.Supp. 436, 437 (N.D.Tex.1994) (applying *Granite* to slip-and-fall cases).

10. *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 453–54 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (emphasis omitted); *McCarthy*, 7 S.W.3d at 727 & n. 4 (emphasis omitted).

11. 988 S.W.2d at 455.

12. 7 S.W.3d at 730–31.

13. 832 S.W.2d at 430.

14. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307–08 (Tex. 2006) (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002), and *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997)). In this case, the principles triggering the insurer's duty to defend apply equally to the insurer's duty to indemnify.

terms of the service contract make Triple S responsible for all operations.

 Second, regardless of the underlying service agreement's terms, we do not follow *Granite* because the fault-based interpretation of this kind of additional insured endorsement no longer prevails.[15] Instead, we interpret "with respect to operations" under a broader theory of causation. Generally, an event "respects" operations if there exists "a causal connection or relation" between the event and the operations; we do not require proximate cause or legal causation.[16] In cases in which the premises condition caused a personal injury, the injury respects an operation if the operation brings the person to the premises for purposes of that operation.[17] The particular attribution of fault between insured and additional insured does not change the outcome.[18]

Our interpretation results, in part, from the ordinary and natural meaning of the phrase "with respect to."[19] It also results from our recognition that, had the parties intended to insure ATOFINA for vicarious liability only, "language clearly embodying that intention was available."[20] The majority of other courts facing the issue have reached a similar result.[21]

---

15. See *Admiral*, 988 S.W.2d at 454–56; *McCarthy*, 7 S.W.3d at 729–31 & n. 9; *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 496–500 (5th Cir.2000).

16. *Mid–Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 155–56 (Tex.1999) (determining whether "injuries were caused by an accident arising out of the use of [a] truck"); *accord Admiral*, 988 S.W.2d at 454–56; *McCarthy*, 7 S.W.3d at 729–31; *see also Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201–03 (Tex.2004) (contrasting "arising out of" with " 'due to,' [which] requires a more direct type of causation that could tie the insured's liability to the manner in which the services were performed.").

17. *Admiral*, 988 S.W.2d at 454–56 ("[I]t is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured."); *McCarthy*, 7 S.W.3d at 729–31; *Highland Park Shopping Vill. v. Trinity Universal Ins. Co.*, 36 S.W.3d 916, 918 (Tex.App.-Dallas 2001, no pet). Our causation analysis is limited to these facts. Because the premises itself caused the injury in this case, we do not decide what level of causation, but-for or otherwise, would be required in a case where the additional insured's premises is merely the situs of the injury.

18. *Admiral*, 988 S.W.2d at 454–56; *McCarthy*, 7 S.W.3d at 729–31; *Highland Park*, 36 S.W.3d at 917–18.

19. See THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1640 (Stuart Berg Flexner ed., 2d ed. unabr. 1987) (With respect to: "with respect to: referring to: concerning"); 2 THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY 2512 (1971) (With respect: "with reference or regard to something.").

20. *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 255 (10th Cir.1993) (quoting *Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co.*, 721 F.Supp. 740, 742 (E.D.Pa.1989)); *accord Mid–Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 228–29 (5th Cir.2000) ("[The insurer] easily could have limited coverage by including in the endorsement terms such as 'vicarious liability' or 'negligence of the named insured.' ").

21. See *Mid–Continent*, 206 F.3d at 497–99 (observing that "*Admiral* and *McCarthy* ... are consistent with the majority view in other jurisdictions"); Steven D. Caley, et al., *The Scope of Additional Insured Coverage—A State Survey, in* INSURANCE LAW 2006: UNDERSTANDING THE ABC'S, at 149 (PLI Litig. & Admin. Practice, Course Handbook Series No. 741, 2006) (collecting cases); Douglas R. Richmond, *The Additional Problems of Additional Insureds*, 33 TORT & INS. L.J. 945, 956–65 (1998) (collecting cases and finding that the "liberal interpretation of the additional insured endorsement is fast becoming the majority rule").

Under section III.B.6 of the Evanston policy, the Jones injury "respect[ed][ ] operations performed by [Triple S]" because Triple S employed Jones, who was performing the operation at the time and place of the injury. Although the pleadings in the underlying suit do not indicate whether or not Jones was performing a Triple S operation at the precise time of the accident, Jones was present at ATOFINA's facility for purposes of Triple S's operations when the accident occurred. As a result, even if ATOFINA's negligence alone caused Jones's injury, section III.B.6 of the Evanston policy provides direct insurance coverage to ATOFINA.[22]

B

■ Evanston and ATOFINA both look to section III.B.5 of the policy to support their respective positions regarding the scope of coverage under the Evanston policy. ATOFINA claims that section III.B.5 provides an independent basis for coverage, while Evanston argues that section III.B.5 does not apply. Section III.B.5 says an insured can be:

Any other person or organization who is insured under a policy of "underlying insurance." The coverage afforded such insureds under this policy will be no broader than the "underlying insurance"

except for this policy's Limit of Insurance.

This is a catch-all section that appears intended to bring within the policy coverage any "other" entities that are insured by the underlying policy but are not included within the preceding who-is-an-insured sections of paragraph III.B of the policy. Because ATOFINA cannot be an insured under sections III.B.1 through III.B.4, section III.B.5 applies in this case as long as ATOFINA was insured under the Admiral policy.

■ Evanston argues section III.B.5 establishes the policy's identity as a "following form" policy of the kind that was specified by the service contract, and that the nature of the policy precludes coverage.[23] Under section III.B.5, coverage cannot extend beyond what the underlying Admiral policy provides. Looking to the underlying policy, which specifically excludes coverage for ATOFINA's sole negligence, we conclude coverage under section III.B.5 is limited and excludes losses caused by ATOFINA's sole negligence.[24] On the record before us, we are unable to determine as a matter of law whether the Jones accident was the product of ATOFINA's sole negligence. The Jones family originally sued both ATOFINA and Triple S,

22. *See Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 939 S.W.2d at 141 ("[T]he general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.").

23. ATOFINA contends Evanston waived any argument regarding the impact of "following form" language in the insurance purchasing agreement by failing to raise this point in its cross-motion for summary judgment. While Evanston did not articulate this argument in precisely the same form as it is enunciated here, we note that Evanston did, in fact, argue before the trial court that the scope of its policy was bounded by the sole-negligence exclusion contained in the Admiral CGL policy. Furthermore, as the party that prevailed

in the trial court, Evanston was not required to raise this issue before the court of appeals, as we do not normally require a party defending a judgment to raise every alternative theory on which the trial court could base its action. *See Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990).

24. Endorsement 20 to the Admiral CGL policy, which has the same effective date as the Admiral policy itself, supports this interpretation. It states:

WHO IS AN INSURED (Section II) is amended to include as an Insured [ATOFINA] but only with respect to liability arising out of [Triple S's] ongoing operations performed for [ATOFINA], but in no event for [ATOFINA's] sole negligence.

alleging both parties were negligent. There were allegations in ATOFINA's pleadings that Jones himself was contributorily negligent. Triple S was eventually nonsuited, and the Jones's claim against ATOFINA was settled with no admission of liability by either party. Thus, without a determination of liability, it is impossible to say whether ATOFINA's responsibility for the accident, if any, excluded it from coverage under section III.B.5 of the Evanston policy.

## C

 Evanston and ATOFINA disagree about the scope of coverage available in the event that ATOFINA qualifies as an insured under both sections III.B.5 and III.B.6 of the Evanston policy. ATOFINA favors a broader scope of coverage under section III.B.6, relying on the fact that it, unlike section III.B.5, does not expressly limit the coverage afforded to an insured to that provided by an underlying policy.

 When interpreting an insurance contract, we "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."[25] "Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured," and "[a]n intent to exclude coverage must be expressed in clear and unam-

biguous language."[26] Therefore, we must adopt ATOFINA's broad interpretation of coverage unless there is "clear and unambiguous" policy language requiring the limitations on coverage in section III.B.5 to also restrict the coverage available when section III.B.6 or any other who-is-an-insured clause independently provides coverage.

Reading paragraph III.B as a whole, we conclude that each who-is-an-insured clause operates to grant coverage independently. Nothing in paragraph III.B suggests that the limitations of one section granting coverage should be read into another separate section granting coverage.[27] In fact, apart from section III.B.5, other paragraph III.B sections contain disparate limiting language in their definitions of "insured," suggesting that each grant of coverage in paragraph III.B can be read independently as a self-contained grant of coverage. For example, section III.B.1 covers employees as "an insured" but excludes coverage for certain bodily injury. For the same reason that we would not read the section III.B.1 bodily injury limitation into the broad coverage of section III.B. 6, we refuse to read section III.B.5's exclusion of coverage beyond the scope of the Admiral policy into section III.B.6. Because ATOFINA is entitled to coverage under more than one who-is-an-insured clause in paragraph III.B, it is not unreasonable to conclude that the policy should

---

25. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991).

26. *Id.*

27. Evanston argues that section III.B.5's use of "under *this policy*" rather than "under *this provision*" expressly limits coverage regardless of the scope of coverage that may apply under another provision within paragraph III.B. We disagree. Such a reading would render any broader coverage provided

by the Evanston policy illusory by always limiting coverage to the scope of the Admiral policy. We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable. *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex.2005) (per curiam) (rejecting policy construction that would render coverage illusory); *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998).

be read to provide the broader measure of coverage available under the applicable clauses. We therefore hold that the Evanston policy provides the broader scope of coverage that does not exclude liabilities arising out of ATOFINA's sole negligence.

### D

■ Evanston next contends that this Court's 1972 decision in *Fireman's Fund v. Commercial Standard Ins. Co.*[28] is dispositive because, applying that holding, ATOFINA cannot recover insurance proceeds based on losses arising from its own negligence. In *Fireman's Fund*, we addressed the relationship between indemnity agreements and the requirement of liability insurance in service contracts.[29] In that case, General Motors Corporation contracted with Sam P. Wallace Co., Inc. to perform work on its Arlington assembly plant.[30] In the contract, Wallace agreed to indemnify GM for any losses arising out of its work and to obtain liability insurance to satisfy that obligation.[31] While performing under the contract, two of Wallace's employees were injured, and they sued GM for negligence.[32] After the case settled, a declaratory judgment action was filed by the involved insurance carriers to resolve a dispute over whether Wallace was required by its contract to indemnify GM for GM's negligence.[33] We followed the general rule in holding that "a contract of indemnity will not afford protection to the indemnitee against the consequences of his

own negligence unless the contract clearly expresses such an obligation in unequivocal terms."[34] Wallace's indemnity agreement with GM failed to do that and thus we concluded that Wallace's insurance carrier was not required to indemnify GM.[35] In doing so, we noted that "all of the relevant provisions of the contract should be considered when arriving at its intent and meaning."[36] In its contract with GM, several provisions evinced Wallace's intent to indemnify GM only with respect to losses occasioned by its own negligence, not GM's negligence.[37] For example, in one provision, Wallace assumed liability "for any injuries or damages occasioned by his agents or employees on the premises of the Owner."[38] In another, under a section entitled "Contractor's Responsibility," Wallace specifically excluded from its responsibility the "negligence of [the] Owner [GM]."[39]

In *Fireman's Fund*, Wallace's obligation to purchase insurance was to secure only its agreement to indemnify GM for Wallace's own negligence.[40] We held that GM was not entitled to indemnification because the contract did not specify that the indemnity agreement extended to GM's negligence.[41] However, it was never contended in *Fireman's Fund* that GM was an additional insured under Wallace's liability policy and was therefore entitled to coverage on that basis, a fact that distinguishes *Fireman's Fund* from this case. This case is similar to *Fireman's Fund* only in that

---

**28.** 490 S.W.2d 818 (Tex.1972).

**29.** *Id.* at 822–23.

**30.** *Id.* at 820.

**31.** *Id.*

**32.** *Id.*

**33.** *Id.*

**34.** *Id.* at 822.

**35.** *Id.* at 823.

**36.** *Id.* at 822–23.

**37.** *Id.* at 821.

**38.** *Id.*

**39.** *Id.*

**40.** *Id.* at 823.

**41.** *Id.*

Triple S was required to purchase liability insurance to secure its indemnity agreement. But Triple S was also required to add ATOFINA as an insured on its policies, which was not a requirement of the contract in *Fireman's Fund.*

This case is more analogous to our 1992 decision in *Getty Oil Co. v. Insurance Co. of North America.*[42] In that case, Getty entered into a contract to purchase chemicals from NL Industries.[43] The contract included an indemnity provision and a broad insurance requirement which provided that "[a]ll insurance coverage carried by [NL] ... shall extend to and protect" Getty "whether or not required [by other provisions of the contract]."[44] After an accident involving NL's product killed one of Getty's contractors, and a jury found that Getty was 100 percent responsible, NL's insurer refused coverage for Getty because the Texas Oilfield Anti–Indemnity Statute[45] prohibited indemnification for one's own negligence.[46] But we held that the insurance requirement of the contract was separate and independent from the indemnity provision and, consequently, the prohibition of the Anti–Indemnity Statute did not apply.[47]

Although the service contract in this case does not include an insurance requirement quite as clear as the one in *Getty,* it is clear enough—it requires that ATOFINA "shall be named as additional insured in each of [Triple S's] policies." Evanston argues that this "brief statement" in the contract is insufficient to extend insured status to ATOFINA for its own negligence because the insurance requirement and certificates of insurance cannot expand coverage beyond the language of the policy.[48] While we agree that an insurance certificate merely evinces the holder's status as an insured and does not create coverage,[49] it is unmistakable that the agreement in this case to extend *direct* insured status to ATOFINA as an additional insured is separate and independent from ATOFINA's agreement to forego *contractual* indemnity for its own negligence. We disapprove the view that this kind of additional insured requirement fails to establish a separate and independent obligation for insuring liability.[50] We conclude that our *Fireman's Fund* decision does not bar ATOFINA from obtaining insurance proceeds for losses resulting from its own negligence.

E

■■■ Next we examine Evanston's obligation to pay $5.75 million of the $6.75 million settlement. Evanston argues that ATOFINA failed to meet its burden of showing that the amount was reasonable, and argues instead that its evidence proves the amount was unreasonable as a matter of law, entitling Evanston to summary judgment. ATOFINA asserts the opposite, contending that its summary judgment evidence proves the settlement amount was reasonable as a matter of law. Before reaching that question, we must address ATOFINA's additional contention

**42.** 845 S.W.2d 794 (Tex.1992).

**43.** *Id.* at 796.

**44.** *Id.* at 804.

**45.** TEX. CIV. PRAC. & REM.CODE §§ 127.001–.007.

**46.** *Getty Oil,* 845 S.W.2d at 804.

**47.** *Id.* ("[T]he additional insured provision of the contract does not support the indemnity agreement, but rather is a separate obligation.").

**48.** *See Granite Const. Co. v. Bituminous Ins. Cos.,* 832 S.W.2d 427, 429 (Tex.App.-Amarillo 1992, no writ).

**49.** *See id.*

**50.** *See Emery Air Freight Corp. v. Gen. Transp. Sys., Inc.,* 933 S.W.2d 312, 315 (Tex.App.-Houston [14th Dist.] 1996, no writ).

that Evanston's denial of coverage bars it from challenging the reasonableness of the settlement.

Our last occasion to address this issue was *Employers Casualty Co. v. Block*,[51] in which we held that if an insurer wrongfully denies coverage and its insured then enters into an agreed judgment, the insurer is barred from challenging the reasonableness of the settlement amount.[52] Although this case presents some different facts, *Block's* rule should apply nonetheless.

In *Block*, "[t]he basic issue before the trial court was the reasonableness of the damages recited in the agreed judgment" between the defendant roofing company and the plaintiff homeowners.[53] The *Block* court of appeals "concluded that once it was determined that [the insurer] wrongfully failed to defend its insured, [the insurer] was barred from collaterally attacking the final agreed judgment."[54] *Block* addressed two questions concerning the effect of the agreed judgment between the plaintiffs and the defendant roofing company.[55] First, did the agreed judgment bar the insurer from contesting the reasonableness of damages?[56] Second, did the agreed judgment bar the insurer from contesting the agreed judgment's factual reci-

tations relating to coverage?[57] *Block's* answer was clear:

> While *we agree with the court of appeals' conclusion that [the insurer] was barred from collaterally attacking the agreed judgment by litigating the reasonableness of the damages recited therein,* we do not agree with its conclusion that the recitation in the agreed judgment that the damage resulted from an occurrence on August 6, 1980 is binding and conclusive against [the insurer] in the present suit.[58]

In this case, the plaintiffs sued ATOFINA, ATOFINA requested coverage from Evanston, and Evanston wrongfully denied coverage, citing the policy terms. ATOFINA brought Evanston into the case as a third-party defendant for a declaration of coverage, and Evanston continued to deny coverage in its pleadings. ATOFINA then settled with the underlying plaintiffs and litigated the remaining coverage issues against Evanston. Though this case differs from *Block* in several respects, none of the differences justify departing from *Block*.

First, the forms of settlement and policy claims differ. *Block's* insurer violated the policy's duty to defend,[59] and while no duty

---

**51.** 744 S.W.2d 940 (Tex.1988).

**52.** *Id.* at 943.

**53.** *Id.* at 942.

**54.** *Id.*

**55.** *Id.* at 943.

**56.** *Id.*

**57.** *Id.* The dispute between ATOFINA and Evanston concerns only the reasonableness of the settlement amount, and not any factual assertions within the settlement agreement text.

**58.** *Id.* (emphasis added) (citations omitted); *see also W. Alliance Ins. Co. v. N. Ins. Co. of N.Y.*, 176 F.3d 825, 830 (5th Cir.1999) (citing *Block*, 744 S.W.2d at 943) ("If an insurer

breaches the duty to defend, it may not contest a determination that its insured was liable in the underlying settlement or verdict (or the amount of either)."); *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1495–96 (5th Cir.1992) ("Texas law denies insurers like these a collateral attack on the settlement itself. . . . Recent opinions of both this Court and the Texas Supreme Court have confirmed that, unlike a request for allocation, an attempt to contest the reasonableness of a consent judgment entered into between the insured and an injured third party is unavailable to an insurer who has wrongfully breached its duty to defend.").

**59.** 744 S.W.2d at 942.

to defend is implicated in this case, Evanston wrongfully denied all coverage under the policy.[60] In addition, *Block's* plaintiff and defendant entered into an agreed judgment,[61] while ATOFINA and the wrongful death plaintiffs used a contractual settlement agreement and nonsuit. But neither the difference in policy claims nor the absence of a judgment memorializing the parties' settlement disrupts the *Block* principles here because *Block's* rule is not derived from the nature of the violated policy term or the formality of agreed judgments. The cases barring insurers' challenges rest on principles of estoppel and waiver; what is most important in this context is notice to the insurer and an opportunity to participate in the settlement discussions.[62]

Some cases in this area bar an insurer's invocation of policy provisions as a defense, not what we have here—an insurer's invocation of the common law reasonableness requirement. However, the principles of notice to the insurer and an intentional choice to forego participation in settlement discussions operate the same no matter how the insurer chooses to attack the settlement. That is, the particular source of the insurer's later-raised attack on the settlement amount—be it a policy provision or a common law rule—does not control our inquiry. One case cited by *Block* noted that, "[h]ad [the insurer] accepted the defense, it would have had, of course, the opportunity to conduct the defense in the manner most likely to have defeated the plaintiffs' claim or at least to have reduced the amount of the damages."[63] Had Evanston not unconditionally denied coverage, it too would have been able to influence the amount of the settlement.[64] For these reasons, the

**60.** The dissent suggests that Evanston never breached any duty owed to ATOFINA. —— S.W.3d at ——. Yet on multiple occasions *before the settlement*, Evanston explicitly rejected ATOFINA's claim for coverage under the policy. Evanston first denied ATOFINA's request for coverage by letter, and then consistently asserted the same in its pleadings throughout the coverage suit. Even if this conduct does not amount to an anticipatory breach of the contract, which it very well might, *see Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 344 (Tex.1995); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515 (Tex.1998), this kind of explicit, unqualified rejection of coverage surely operates to trigger the equitable principles in *Block*.

**61.** 744 S.W.2d at 942.

**62.** *See Gulf Ins. Co. v. Parker Prods., Inc.*, 498 S.W.2d 676, 679 (Tex.1973); *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233, 237 (1956); *see also St. Louis Dressed Beef & Provision Co. v. Md. Cas. Co.*, 201 U.S. 173, 181, 26 S.Ct. 400, 50 L.Ed. 712 (1906) ("Moreover, the [insurer], by its refusal [to defend], cut at the very root of the mutual obligation, and put an end to its right to demand further compliance with the supposed term of the contract on the other

side."); *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 29, 140 P.3d 1210, 1216; *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co.*, 851 So.2d 466, 476–78 (Ala.2002); *D.E.M. v. Allickson*, 555 N.W.2d 596, 599–601 (N.D. 1996); *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 531–32 (Iowa 1995); *Fireman's Fund Ins. Co. v. Sec. Ins. Co. of Hartford*, 72 N.J. 63, 367 A.2d 864, 867–73 (1976); *Theodore v. Zurich Gen. Accident & Liab. Ins. Co.*, 364 P.2d 51, 55 (Alaska 1961); *Albert v. Me. Bonding & Cas. Co.*, 144 Me. 20, 64 A.2d 27, 29–30 (1949). We cite these additional cases for their use of the equitable waiver and estoppel decision frameworks generally, but not for their opinions of how the equitable balance should be struck.

**63.** *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.).

**64.** Admiral tendered its $1 million before the settlement, invoking Evanston's duties as an excess insurer. The Evanston policy gave Evanston the right to "associate with the insured in the defense and control of any 'claim' or 'suit' that we think may involve this policy." *Cf. Keck, Mahin & Cate v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 701 (Tex.2000) (supporting an excess insurer's

difference in policy claims and the absence of a formal judgment do not persuade us to abandon *Block* here.[65]

In addition, this case's posture is different than *Block's*. In *Block*, the underlying plaintiff sued the insurer as a judgment creditor, leading to some disapproval from this Court in *State Farm Fire & Casualty Co. v. Gandy*.[66] In *Gandy*, the Court said:

> In no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee. We disapprove the contrary suggestion in dicta in *Employers Casualty Company v. Block*, 744 S.W.2d 940, 943 (Tex.1988), and *United States Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 954 (5th Cir. 1990).[67]

*Gandy* does not disrupt the application of *Block* to this case for two reasons. First, this case does not fall within *Gandy's* holding. *Gandy's* holding was explicit and narrow, applying only to a specific set of assignments with special attributes.[68] By its own terms, *Gandy's* invalidation applies only to cases that present its five unique elements.[69] Here, *Gandy's* key factual predicate is missing: ATOFINA made no assignment of its claim against Evanston; ATOFINA sued Evanston directly.[70] That removes this case from the formal bounds of *Gandy*. Second, *Gandy's* rationale does not require disapproving *Block* in this setting. *Gandy's* reason for invalidating assignments was simple: Those assignments made evaluating the merits of a plaintiff's claim difficult by prolonging disputes and distorting trial litigation motives.[71] But not all cases implicate *Gandy's* concerns. "We should not invalidate

---

65. The dissent cites *United States Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949 (5th Cir.1990), for the proposition that "an insurer that *does* have a duty to defend is not estopped to contest the reasonableness of a settlement." 256 S.W.3d at 677. Though the Fifth Circuit did so hold, the dissent misapplies that case. Unlike Evanston, the insurer in that case *offered to supply the policy benefit* (in that case, the duty to defend) under a reservation of rights. *U.S. Aviation Underwriters*, 896 F.2d at 952. More importantly, unlike ATOFINA, the insured in that case *rejected the insurer's offer*. *Id.* As a result of those two facts, the Fifth Circuit explicitly distinguished its case from *Block* and other cases where a defense *is* neither tendered nor rejected. *Id.* at 954–55. For those latter situations, the Fifth Circuit concluded that "under Texas law an insurer which is obliged to defend its insured but flatly refuses to do so ... cannot contest the reasonableness of a consent judgment agreed to between the insured and the injured party." *Id.* at 955. Thus, *United States Aviation Underwriters* supports our holding today, not the opposite.

66. 925 S.W.2d 696 (Tex.1996).

67. *Id.* at 714.

68. We hold that a defendant's assignment of his claims against his insurer to a plaintiff is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim.

*Id.* "We do not address whether an assignment is invalid when any element of the rule is lacking, such as when an insurer has not tendered a defense of its insured." *Id.* at 719.

69. *Id.* at 715 ("In the present case we have focused on the validity of the assignment.").

70. In addition, Evanston never tendered a defense, a fact *Gandy* purported to rely upon. *See id.* at 714.

71. *Id.* at 707–19.

---

right to "interject itself into settlement negotiations before tender by the primary insurer").

a settlement that is free from this difficulty [of fairly evaluating a plaintiff's claims] simply because it is structured like one that is not." [72]

■ Barring Evanston's challenge here does not implicate *Gandy's* concerns. Preventing insurers from litigating the reasonableness of a settlement does not extend disputes; by definition, it shortens them. Nor is there a risk of distorting litigation or settlement motives here. ATOFINA settled without knowing whether or not it would be covered by the policy, leaving in place its motive to minimize the settlement amount in case it became solely responsible for payment.[73] To accomplish *Gandy's* goal of "fairly determin[ing]" the value of plaintiffs' claims, we apply the *Block* rule to this circumstance, which will encourage early intervention by the insurers who are best positioned to evaluate the worth of claims during settlement discussions. Thus, without relevant factual differences or *Gandy* concerns to dissuade us from following *Block*, we hold that Evanston's denial of coverage barred it from challenging the reasonableness of ATOFINA's settlement.[74] Evanston is, therefore, bound to pay the $5.75 million that remains of the settlement.

### F

■ Finally, Evanston argues that the court of appeals erroneously awarded ATOFINA 18% per annum of the claim amount and attorney's fees for Evanston's failure to promptly pay claims under article 21.55 of the Texas Insurance Code.[75] Under article 21.55, a court may impose damages "[i]n all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefore is not in compliance with this article." [76] "Claim" is defined as "a first party claim ... that must be paid by the insurer directly to the insured or beneficiary." [77] Evanston relies on the definition of "claim" in arguing that the statute does not apply to claims for reimbursement of settlement costs in the context of a liability insurer's denial of indemnity for a third-party claim against its insured.

Though the statute does not define first-party claims, we distinguish first-party and third-party claims based on the claimant's relationship to the loss.[78] "[A] first-party claim is stated when 'an insured seeks recovery for the insured's own loss,' whereas a third-party claim is stated when 'an insured seeks coverage for injuries to a third party.'" [79] A loss incurred in satis-

---

72. *Id.* at 714. Even when it addressed assignments, *Gandy* did not present an absolute rule: "Not every settlement involving an assignment of rights in exchange for a covenant to limit the assignor's liability has the problems we have described." *Id.*

73. *Cf. Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1, 14 (2003) ("[T]he risk of collusion and fraud can be lessened ..., if not avoided altogether, by placing a requirement upon the plaintiff to prove that the settlement it reached with the insured was reasonable before that settlement can have any binding effect upon the insurer.").

74. The denial does not bar Evanston from challenging coverage. *See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex.2004) ("Even if a liability insurer

breaches its duty to defend, the party seeking indemnity still bears the burden to prove coverage if the insurer contests it."); *Block*, 744 S.W.2d at 943–44.

75. The "Prompt Payment of Claims" statute has been recodified without substantial change. *See* Tex. Ins.Code §§ 542.051–.061; *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 5 (Tex.2007). For purposes of this opinion, we refer to article 21.55.

76. Tex. Ins.Code art. 21.55 § 6.

77. *Id.* § 1.

78. *Lamar Homes*, 242 S.W.3d at 17.

79. *Id.* (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 n. 2 (Tex.1997)).

faction of a settlement belongs to the third party and is not suffered directly by the insured.[80] This case in which ATOFINA seeks coverage for injuries sustained by a third party presents a classic third-party claim. Because the Legislature intended that article 21.55 apply to claims personal to the insured,[81] ATOFINA is not entitled to the article 21.55 damages or attorney's fees. We therefore reverse the portion of the court of appeals' judgment pertaining to article 21.55 damages and attorney's fees.

### III

We affirm the court of appeals' holding that ATOFINA is an insured under the Evanston insurance policy and is thus entitled to coverage for the Jones litigation settlement, and we affirm the court of appeals' holding that Evanston is bound to pay the $5.75 million settlement amount. We reverse the court of appeals' judgment permitting ATOFINA to recover attorney's fees and damages under article 21.55 of the Texas Insurance Code because ATOFINA is entitled to no such damages or fees. We remand the case to the trial court for further proceedings on ATOFINA's other claims for attorney's fees, on its claim for prejudgment interest, and for rendition of judgment consistent with this opinion.

Justice HECHT filed an opinion concurring in part and dissenting in part, in which Justice JOHNSON joined.

Justice HECHT, joined by Justice JOHNSON, concurring in part and dissenting in part.

I agree with the Court that Evanston's commercial liability umbrella policy covered the Jones claim, and that Evanston must reimburse ATOFINA the settlement amount if it was reasonable. I do not agree that Evanston, which had no duty to defend ATOFINA, is estopped to challenge the reasonableness of the settlement simply because it denied coverage and refused to participate in negotiations with the claimants. I would remand the reasonableness issue to the trial court to resolve the parties' factual dispute. Accordingly, I respectfully dissent.

An insurer that breaches its duty to defend a claim cannot later be heard to complain that the amount the insured paid in settlement was unreasonable, absent evidence of collusion. This is what we held in *Employers Casualty Co. v. Block*,[1] and as far as I can tell, it is uniformly the rule throughout the country.[2] This is hardly surprising. An insurer that wrongly refuses to defend a claim, leaving its insured to defend himself, can hardly be allowed to argue that it would have done a better job.

But Evanston had no duty to defend ATOFINA, as ATOFINA itself admits.[3] The umbrella policy gave Evanston *the right* to defend a covered claim but *no duty* unless the claim was not covered by an underlying policy or that policy's limits were exhausted, neither of which occurred here.[4] Then why does *Block's* estoppel

---

**80.** *Id.*

**81.** *Id.* at 20.

**1.** 744 S.W.2d 940, 943 (Tex.1988).

**2.** *See ante* at 670–71 & n. 62.

**3.** ATOFINA's Brief in Response at 31 ("To be sure, Evanston did not owe ATOFINA a duty to defend."); *see also ante* at 671–72 ("no duty to defend is implicated in this case").

**4.** The policy stated:
 ' "A. We will have the right to defend any "claim" or "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies, but:
 * * *
 "2. When an "occurrence" or "offense" is covered by this policy and is also covered by "underlying insurance" or by any other applicable insurance, we have no duty to defend. We shall have the right to associate with the

rule apply? Because, the Court says, Evanston refused to participate in settlement negotiations between ATOFINA and the Jones plaintiffs. "[W]hat is most important in this context," the Court explains, "is notice to the insurer and an opportunity to participate in the settlement discussions."[5] But Evanston had no duty to participate in settlement discussions, and surely ATOFINA's invitation could not create one. The Court also faults Evanston for refusing to acknowledge coverage, suggesting that Evanston's denial of coverage may have been an anticipatory breach of the policy.[6] But even if it was, a party's anticipatory breach of a contract only allows the other party to sue for damages immediately; it does not alter the breaching party's contractual obligations.[7] The Court says that Evanston's "explicit, unqualified rejection of coverage surely operates to trigger the equitable principles in *Block*."[8] But Evanston had no duty to admit coverage; its duty under its policy was to pay a judgment on a covered claim or a settlement to which it agreed. Neither occurred. Evanston's policy provided that it had "[n]o other obligation ... to

... perform acts or services". Even if Evanston had admitted coverage, it still had no duty to participate in settlement negotiations. The Court holds that when an excess carrier acts entirely within its rights, equity requires that it be estopped to question the reasonableness of a settlement in which it took no "property damage", "personal injury", or "advertising injury" even if such "claim" or "suit" is groundless, false, or fraudulent; part. It is a different sort of equity that punishes someone, even an insurance company, for acting legally.

A few days ago, the Court refused to allow an insurer to seek restitution for payment of a non-covered claim because the policy did not provide for such an equitable remedy.[9] Sounding what has come to be a familiar refrain, the Court "proclaimed itself 'loathe to judicially rewrite the parties' contract by engrafting extra-contractual standards' ".[10] If the insurer had wanted the right to restitution, the Court said, it should have said so in the policy. Applying this rule, one might think that if ATOFINA had wanted the

---

insured in the defense and control of any "claim" or "suit" that we think may involve this policy.

"3. When an "occurrence" or "offense", covered by this policy, would have been covered by "underlying insurance" but for the exhaustion of the applicable limit of such "underlying insurance" as a result of any "occurence(s)" or "offense(s)" to which this policy would have applied, we will have a duty to defend any "claims" or "suits" to which this policy applies.

"4. When an "occurrence" or "offense", covered by this policy, is not covered by "underlying insurance" or any other applicable insurance, we will have the duty to defend any "claims" or "suits" to which this policy applies.

"5. When we have a duty to defend as described in 3. and 4. above, we will:

"a. Defend any "claim" or "suit" against the insured seeking damages on account of "bodily injury",

"b. Investigate, negotiate, and settle any "claims" or "suits" as we deem expedient....' "

5. *Ante* at 672.

6. *Ante* at 672 n. 60.

7. *See Continental Am. Life Ins. Co. v. McCain*, 416 S.W.2d 796, 797 (Tex.1967) (per curiam); *Sanders v. Aetna Life Ins. Co.*, 146 Tex. 169, 205 S.W.2d 43, 45 (1947).

8. *Ante* at 672 n. 60.

9. *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 45 (Tex.2008).

10. *Id.* (quoting *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex.2007)).

rights to require Evanston to acknowledge coverage before payment was due and to accept any invitation to participate in settlement negotiations, it should have included them in the policy. Either the Court thinks that imposing additional duties on an insurer does not entail rewriting the policy, or else it does not find that effort quite as loathesome.

ATOFINA has not cited, and the Court has not found, authority of any kind to support the Court's holding that an excess insurer is estopped to challenge the reasonableness of a settlement in these circumstances. This, too, is hardly surprising. What possible basis could there be to estop an insurer who has not breached a duty to its insured? At least one case suggests that the Court's holding is wrong. The Fifth Circuit has held in *United States Aviation Underwriters, Inc. v. Olympia Wings, Inc.* that an insured who rejects a defense tendered under a reservation of rights cannot require the insurer, once coverage has been established, to pay a settlement of the claim without proving that it was reasonable.[11] If an insurer that has not breached its duty to defend is not estopped from contesting the reasonableness of a settlement, surely an insurer with no duty to defend at all should not be estopped. Amazingly, the Court finds support in the Circuit's conclusion that "under Texas law an insurer *which is obliged to defend its insured* but flatly refuses to do so ... cannot contest the reasonableness of a consent judgment agreed to between the insured and the injured party."[12] The Circuit was completely right. But here, Evanston had no duty to defend. In the Court's view, since an insurer that breaches a duty to defend is estopped, an insurer with no duty to defend is also estopped. Any logic hiding in this view is hard to find.

Having refused to agree to a settlement because it believed the claim was not covered, and now having had the coverage issue resolved in ATOFINA's favor, Evanston is required to pay the settlement if it was reasonable. But nothing in Evanston's policy obligates it to pay an unreasonable settlement, and the parties still disagree whether ATOFINA's settlement was reasonable. ATOFINA moved for summary judgment that its settlement was reasonable, based on the affidavits of its lawyer and the mediator in the liability case. This evidence certainly supports ATOFINA's position, as does its argument that it would not have paid $5.75 million out of its own pocket (in addition to the $1 million its primary insurer paid) to settle the claim if it had thought the amount unreasonable. But ATOFINA's view of reasonableness changed over time. Only a few months before the case settled, ATOFINA's lawyer suggested in a letter to Evanston's adjuster that a judgment of $5 million was possible. This estimate, though accompanied by caveats about the assumptions on which it was based, was only about three-fourths of the settlement to which ATOFINA eventually agreed. ATOFINA argues that developments after the letter was written cast the case in a poorer light. Evanston offered the letter and affidavits from its adjuster and an insurance defense lawyer in response to ATOFINA's motion. Both opined that ATOFINA's settlement was more than what would have been reasonable; one estimated that a reasonable settlement would have been between $1 million and $2 million. These affidavits certainly do not establish that the settlement was unreasonable, but they do raise a fact issue that must be resolved. I would remand the case to the trial court for that purpose.

---

**11.** 896 F.2d 949, 955 (5th Cir.1990).

**12.** *Ante* at 673 n. 65 (quoting *Olympia Wings,*

896 F.2d at 955) (emphasis added).

Because the Court does not do so, I respectfully dissent.